## El Pueblo *v.* Rivera (a) Panchito.

## Apelación procedente de la Corte de Distrito de

## Guayama.

No. 23.   Resuelto en diciembre 9, 1905.

Acusación.—Desestimación.—Las disposiciones del art. 448 del Código de Enjuiciamiento Criminal no tienen aplicación á aquellos casos en que, por haber sido revocada en apelación la sentencia dictada contra el acusado, se hubiera ordenado la celebración de un nuevo juicio.

Procesos criminales.—Facultades del fiscal general.—Fiscal especial.—El Fiscal General ó Attorney General de Puerto Rico tiene facultades para intervenir personalmente en todos los procesos criminales que estuvieren pendientes en las Cortes Insulares, ó para nombrar fiscales especiales que intervengan en los mismos, asumiendo su representación, ú ordenar que el fiscal de un distrito se traslade á otro y lleve la acusación en cualquier caso que estuviese pendiente en el último.

Pruebas.—Confesión del acusado.—Testimonio de referencia.—El testimonio de testigos que declaren sobre la confesión que de su delito les hubiere hecho el acusado, no puede estimarse como testimonio de referencia, siendo, por el contrario, una prueba de carácter directo de los actos del acusado, y perfectamente admisible.

Id.—Casos en que la confesión no es admisible.—Las únicas objeciones que el acusado puede oponer á la admisión de testimonio sobre alguna confesión que de su delito hubiere hecho, son las de haberse hallado bajo coacción, al tiempo de verificarla, ó la de haber sido inducido á hacerla por esperanza ó promesas que se le hicieran.

Id.—Preguntas impertinentes.—Opiniones de los testigos.—Las preguntas dirigidas á un testigo, que tiendan á obtener su opinión sobre determinados hechos del caso, son inadmisibles y deben ser excluídas por impertinentes, toda vez que al jurado, y no á los testigos, corresponde hacer las deducciones de los hechos que ante ellos se establezcan.

Id.—Testigos.—Los testigos no necesitan poseer título profesional alguno para declarar en una causa criminal sobre hechos que sean de su propio y personal conocimiento.

Apelación.—Nuevo juicio.—Pruebas.—Pliego de excepciones.—Relación de hechos.—Para que el Tribunal Supremo pueda considerar y resolver, en una apelación, una moción de nuevo juicio fundada en que el veredicto es contrario á derecho ó á las pruebas, es necesario que la prueba practicada en el juicio se someta á la consideración del Tribunal por medio de una relación de hechos ó pliego de excepciones, pues en su defecto, se presumirá que tanto el veredicto como la sentencia son correctos y están ajustados á derecho.

Id.—Instrucciones de la corte al jurado.—Si el acusado no hubiere hecho objeciones contra las instrucciones dadas por la Corte al jurado, puede considerarse que ha renunciado á ellas, y á falta de un pliego de excepciones ó relación de hechos que contengan la prueba practicada, y justifiquen la alegación de que las instrucciones son erróneas, éstas se estimarán correctas, á no ser que

aparezca que cualquiera que hubieren sido· los hechos probados en el juicio, dichas instrucciones resultan manifiestamente erróneas.

Id.—Los errores alegados deben estar justificados en los autos.—Es un principio general de jurisprudencia, que la parte que alegue la existencia de errores en los procedimientos de un tribunal, debe justificarlos, haciendo referencia para ello, á las constancias de autos.

Id.—Asesinato en primer grado.—Robo.—Cuando la calificación de asesinato en primer grado se funde precisamente en la circunstancia de haberse cometido en la perpetración de robo, el tribunal debe definir este delito é instruir al jurado con respecto al mismo.

Id.—Sentencia de muerte.—La frase "*que Dios acoja su alma con benignidad,*" usada por el juez al condenar á un acusado á la pena capital, no es impropia, ni puede en modo alguno constituir error material que justifique la revocación de la sentencia, pudiendo usarse ú omitirse á discreción del juez sentenciador.

Id.—Errores que no perjudiquen los derechos substanciales del acusado.— Cuando el Tribunal inferior no hubiera cometido ningún error fundamental que pueda perjudicar los derechos substanciales del acusado, y justificar la revocación de la sentencia apelada, ésta debe ser confirmada.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Díaz Navarro.*

Abogado del apelado: *Sr. Rossy, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

La apelación presentada, trae esta causa ante nosotros por segunda vez. La sentencia dictada en el primer juicio, por la Corte de Distrito, fué considerada y revocada á causa de informalidad en el veredicto, en veinte y cinco de junio de 1904· Se celebró un nuevo juicio en 30 de marzo último, de conformidad con lo ordenado en la sentencia dictada por este Tribunal, cuyo juicio resultó por segunda vez en veredicto y sentencia declarando culpable al acusado, de asesinato en primer grado, y dicho acusado fué nuevamente sentenciado á muerte, el día 6 de abril de 1905; y contra esta sentencia, se ha interpuesto recurso de apelación para ante este Tribunal. La copia de los autos fué presentada ante este Tribunal, el 16 de mayo último, y careciendo el apelante de abogado defensor y habiendo sido condenado en causa por delito de pena capital, este Tribunal, con arreglo á la ley, (el acta de 9

de marzo de 1905), designóle un abogado defensor, nombrándose al Hon. Herminio Díaz Navarro para esta ardua y gratuita labor, prestando éste á la causa cuidadosa atención y haciendo una defensa hábil y vigorosa. Por supuesto, él tenía que aceptar los autos tales como vinieran de la corte inferior, y hacer de ellos el mejor uso posible. La vista de la apelación tuvo lugar el 20 de octubre último, estudiándose los alegatos, y oyéndose los informes orales de los letrados de ambas partes.

La causa parece haber sido juzgada con gran cuidado en el Tribunal inferior, y el abogado defensor tomó toda clase de precauciones para proteger los derechos del acusado. Se presentó y firmó ante el Tribunal sentenciador, un pliego de excepciones, observando cuidadosamente la ley aplicable al mismo, y reservando nuevos puntos de defensa para su consideración por este Tribunal. Algunos de dichos puntos fueron abandonados por el eminente abogado del acusado, y otros supuestos errores en los autos, que no se habían consignado en el pliego de excepciones, fueron sometidos por él á la consideración de este Tribunal. Dada la importancia de esta causa, examinaremos todos los puntos presentados, ya hayan surgido en el Tribunal inferior ó ya en este Tribunal, variando el orden de consideración en la forma que nos parezca más natural y conveniente. Si el abogado que hizo la defensa del acusado en el Tribunal de Distrito, hubiese leído con atención el dictamen de este Tribunal en la primera vista algunos de los puntos alegados por él, habrían sido probablemente omitidos y se habría evitado así mucho trabajo inútil.

1.—Se presenta en este Tribunal la misma objeción contra la acusación, que fué presentada en el juicio anterior ante el Tribunal inferior y este Tribunal. Esta es la de que la acusación imputa más de un delito. Como el asunto fué considerado muy detenidamente por esta cor-

te, al conocer de dicha causa en el mes de junio del año
próximo pasado, no es necesario ahora hacer más con
respecto á esta cuestión, que referirnos al dictamen emiti-
do en esa época. Véase la Jurisprudencia Criminal de
1904, página 55. Entonces la acusación fué considerada
suficiente; la acusación es la misma todavía, y nuestra
opinión con respecto á ella, no ha cambiado. No está su-
jeta á las objeciones presentadas.

II.—El pliego de excepciones demuestra que en el acto
del juicio de esta causa, después de haber prestado jura-
mento el jurado, el acusado presentó á la Corte de Distri-
to una moción escrita, solicitando que se sobreseyese en el
proceso, fundando su solicitud en el artículo 448, párrafo
2 del Código de Enjuiciamiento Criminal, porque el jui-
cio no había sido transferido á petición suya, y no se le
había sometido á juicio en el término de ciento veinte
días, á contar desde la resolución del Tribunal Supremo,
concediéndole un nuevo juicio, en junio de 1904.

El juez del Tribunal sentenciador desechó la moción
declarando que la sección 448 del Código de Enjuicia-
miento Criminal no era aplicable al segundo juicio, y
demostrando que la moción, solicitando el sobreseimiento
había sido presentada después de haberse formado la
lista del jurado, y de haber prestado juramento los
miembros del mismo, citándose por dicho juez los fallos
pronunciados por el Tribunal Supremo de California,
con arreglo á la sección 1832 del Código Penal de Califor-
nia que es esencialmente idéntica á la sección 448 del Có-
digo de Enjuiciamiento Criminal de Puerto Rico. La
resolución del Tribunal sentenciador era correcta, y es
sostenida por un hábil dictamen dado en la causa de *The
People* v. *Hawkins,* 127 Cal. página 372, en la que se dice
lo siguiente:

"El dos de diciembre de 1898, el Fiscal de Distrito presentó en
la Corte inferior una acusación, imputando al acusado el delito de

agresión con intención de matar, y manifestando asimismo que la agresión fué con arma mortífera.  La Sección 1382 del Código Penal, contiene la siguiente disposición: "A menos que exista justa causa contraria, el Tribunal decretará el sobreseimiento del proceso en los casos siguientes: .......... "Cuando un acusado, cuyo juicio no haya sido transferido á petición suya, no sea sometido á juicio en el término de sesenta días á contar desde la presentación de la acusación."  El 3 de enero de 1899, el Tribunal dictó una providencia, señalando el día 3 del siguiente mes de febrero para el juicio de la causa del acusado.  En dicho día 3 de febrero el acusado estaba presente en el Tribunal con su abogado y manifestó que estaba listo para el juicio; enseguida se formó la lista del Jurado, y éste último prestó juramento para juzgar la causa; entonces el acusado hizo una moción pidiendo al Tribunal que sobreseyese en la causa y que le pusiese en libertad por el motivo de que no se le había sometido á juicio dentro de sesenta días, después de haberse presentado la acusación.  El Tribunal denegó la moción, el juicio siguió, y resultó en un veredicto de culpable de agresión con arma mortífera, con cuyo motivo se decretó auto de prisión."

"El Tribunal no está en el deber de ordenar el sobreseimiento en la causa, con arreglo á la citada Sección 1382, á menos que el acusado lo pida.  (*Ex Parte Fennessy,* 54 Cal. 101), de modo que ese derecho podrá ser abandonado lo mismo que otros privilegios estatutorios del acusado que no afecten la Jurisdicción del Tribunal.  Está bien establecido el que la formación de la lista del Jurado constituye una parte del juicio (Silcox v. Lang, 78 Cal. 118); el peligro legal, es decir, el peligro de ser condenado  empieza para el acusado desde el momento en que el Jurado "ha sido encargado de su causa", y el Jurado se halla encargado de la misma, cuando sus miembros hayan sido inscritos en la lista del Jurado, y hayan prestado juramento.  (Cooley's Constitutional Limitations, 6th Ed. 399).  Por lo tanto, cuando el acusado hizo aquí la moción, solicitando el sobreseimiento, "había sido sometido á juicio," y se hallaba sometido á juicio sin previa objeción de que el término de sesenta días había transcurrido. Si pudo entonces hacer esa objeción por primera vez, pudo hacerla también al anunciarse el veredicto ó en cualquiera otra época del juicio. Nosotros estamos convencidos de que la ley nunca fué destinada para tales usos, y debemos declarar que el acusado renunció al beneficio de la misma (si es que tuvo derecho á dicho beneficio), por la omisión de reclamarlo en el momento oportuno.

Las siguientes causas tienden á sostener esta conclusión: *People* v. *Bennet,* 114 Cal. 56; *Polack* v. *Gurnee,* 66 Cal. 266; *People* v. *Romero,* 18 Cal. 89; *People* v. *Johnson,* 104, Cal. 418."

Comparemos la ley puertorriqueña sobre el mismo asunto. La sección 448 de la Ley de Enjuiciamiento Criminal, en su segundo párrafo, dispone:

"Cuando un acusado, cuyo juicio no haya sido transferido á petición suya, no sea sometido á juicio en el término de ciento veinte días, á contar desde la presentación de la acusación, el Tribunal decretará, á menos que exista justa causa contraria, el sobreseimiento del proceso."

Esta sección no tiene referencia á una causa después que ésta haya sido llevada ante el Tribunal Supremo y revocada por el mismo, según claramente resulta de la lectura de la misma ley, que exige que el juicio se verifique dentro de los ciento veinte días después de la presentación de la acusación. Por supuesto, esto sería imposible, después de haberse llevado la causa en apelación ante el Tribunal más alto; y no hay autorización para insertar—como el apelante en efecto trata de hacer—en lugar de las palabras "después de la presentación de la acusación", las palabras "después de la concesión de un nuevo juicio por el Tribunal Supremo." Si la intención de la legislatura hubiese sido establecer disposición alguna para un caso como el de que se trata, dicho cuerpo, sin duda, habría añadido otro párrafo á la ley expresando claramente tal intención. No es necesario continuar la discusión de este punto, puesto que ha sido definitivamente resuelto por la resolución de California, anteriormente mencionada, que está conforme con la razón y la justicia.

III.—Una de las principales objeciones que se presentaron en el acto del juicio de esta causa ante el tribunal sentenciador, y que fué sostenida con gran celo ante este Tribunal Supremo, es la de que el señor Campillo, Fiscal del Distrito de San Juan, no tenía autoridad para asis-

tir en este proceso en el Tribunal de Distrito de Guayama, puesto que esas funciones incumbían entera y exclusivamente al fiscal de dicho distrito. En el acto del juicio de la causa, según lo demuestra el pliego de excepciones, se presentó esta objeción en 30 de marzo, antes de formarse la lista del jurado, y antes de empezarse el juicio. El abogado defensor del acusado, citó como fundamento de su objeción, las secciones 64 y 74 del Código Político; la ley de 13 de marzo de 1904, y las secciones 95 y 269 del Código de Enjuiciamiento Criminal. El Fiscal se ocuso á la moción, basando su oposición en la sección 235 del Código de Enjuiciamiento Criminal y alegando que tenía una comisión del Gobernador de Puerto Rico y una orden verbal del Hon. Fiscal General auxiliar, para tomar parte en el juicio. Luego presentó una comunicación del Gobernador en el mismo sentido. La defensa en su contestación, alega además que no puede admitirse el nombramiento hecho por el Gobernador, porque en estos asuntos, el Fiscal General es el único funcionario que con arreglo á la ley, tiene autoridad para hacer tal nombramiento. El Tribunal desestimó la moción de la defensa, y permitió al fiscal de la Corte de Distrito de San Juan que compareciera y tomara parte en el proceso. Contra esta resolución del Tribunal, el acusado tomó excepción en debida forma. Los mismos argumentos fueron presentados ante este Tribunal, por el hábil letrado nombrado para defender la causa ante el mismo.

Es cierto que, con arreglo á las leyes estatutorias de Puerto Rico, el fiscal del distrito en donde se sigue el proceso, tiene á su cargo dicho proceso, y es su deber, en general, atender á todos los asuntos de tal índole; pero el Fiscal General tiene facultades para intervenir en cualquier época en dichos procesos, y esas facultades le han sido concedidas claramente por la ley. Por supuesto, habiéndosele concedido esas facultades, el método de su in-

tervención se deja al Fiscal General, y él puede intervenir personalmente ó por conducto de una persona nombrada para ese fin. Otra sección de la ley, le concede expresamente la facultad, cuando el Fiscal de Distrito no está presente en el acto del juicio, de nombrar un Fiscal de Distrito especial, para dirigir el proceso. Bajo la Ley Orgánica, sección 21, el Fiscal General es el primer funcionario del Departamento de Justicia de la isla, y tendrá todas las atribuciones, y ejercerá todas las funciones que por la ley corresponden á un fiscal de Territorio en los Estados Unidos hasta donde sea localmente aplicable, y desempeñará todos los demás cargos que le asigne la ley; y por conducto del Gobernador pasará al Fiscal General de los Estados Unidos, los informes que éste le pidiere, los cuales serán trasmitidos anualmente al Congreso. (Véase la Ley Orgánica, sección 21, página XXIII de los estatutos revisados.)

El Sr. Campillo, ó sea el fiscal cuya intervención fué impugnada, es el fiscal formalmente constituído y nombrado para el Distrito de San Juan. El era Fiscal del Distrito de Humacao, en la época en que se presentó esta acusación; siendo entonces Guayama una parte del Distrito de Humacao. El preparó la acusación y dirigió la causa en el juicio anterior ante el Tribunal del Distrito, y estaba perfectamente al corriente de todos los hechos y circunstancias de dicha causa, y de la ley aplicable á la misma. Sin duda por estas razones el Fiscal General tuvo por conveniente enviarle á Guayama, fuera de su Distrito, para ayudar al fiscal de aquél, en un proceso tan importante que envolvía la vida del acusado y el cumplimiento de la ley contra asesinatos. Con arreglo á la Ley Orgánica y á los estatutos de Puerto Rico, creemos que es claro que el Fiscal General tenía tal facultad y que, aparte de la comisión del Gobernador que tenía el Sr. Campillo, la orden verbal del Fiscal General auxiliar era suficiente au-

torización para que aquél compareciera y tomara parte en el proceso.

Se ha hecho referencia, en este respecto y en adición á las autoridades anteriormente citadas, á una ley, disponiendo el nombramiento de Fiscales de Distrito, definiendo sus deberes, y para otros fines; cuya ley fué aprobada en 10 de marzo de 1904. Leyes de 1904, páginas 112 á 113. Con arreglo á la sección 3 de esta ley, será el deber de cada Fiscal de Distrito, procesar en su distrito á todos los delincuentes por crímenes y delitos de que pueda conocer bajo la autoridad de "El Pueblo de Puerto Rico", y ejercer todas las acciones civiles que conciernan al "Pueblo de Puerto Rico", y deberá llenar cumplidamente todos los otros deberes que le confieran las leyes, y comisiones del Fiscal General. Esta sección sola de por sí autorizaría á cualquier fiscal designado por el Fiscal General, para salir de su distrito á otro, y ayudar en el proceso de una causa por asesinato, pendiente en dicho distrito. Semejante autoridad y discreción han sido sabiamente conferidas al funcionario principal de justicia del Gobierno Insular, y en el presente caso han sido atinadamente ejercidas para la mejor administración de la justicia, sin infracción de los derechos del acusado. Véanse los dictámenes emitidos por este Tribunal, en la causa de *El Pueblo de Puerto Rico* contra *Aponte,* resuelta el 11 de noviembre de 1905, y la de *El Pueblo de Puerto Rico* contra *Rivera,* resuelta en 21 de noviembre del mismo año.

IV.—En los párrafos cuarto y sexto del pliego de excepciones, el acusado presenta objeciones contra las declaraciones de los testigos Carbó y Lugo Viña, fundadas en que sus declaraciones eran testimonio de referencia. Ellos declararon acerca de confesiones que les había hecho el acusado; y este mismo punto fué presentado ante este Tribunal y considerado por el mismo en la anterior vista de

lá causa. Parece que aún existe en la mente de los aboga-
dos defensores, confusión con respecto al testimonio dado
por testigos acerca de confesiones hechas por el acusado, y
testimonio de referencia propiamente dicho. Según hemos
dicho en una vista anterior, con respecto á esta materia:

"El testimonio de testigos que relataren detalladamente ante el
Tribunal, las confesiones hechas á ellos por el acusado, no puede
considerarse como testimonio de referencia, sino que es prueba di-
recta de los actos del acusado, que pueden imputársele en el juicio.
Si el acusado deseare excluir las confesiones que se propongan pre-
sentar contra él, debía demostrar que se hallan comprendidas en
una de las excepciones establecidas por la ley, según la interpretan
los autores comentaristas; esto quiere decir que debía demostrar que
se hallaba bajo coacción, ó que obraba bajo la influencia de espe-
ranzas ó promesas que se le habían hecho para el caso de que hi-
ciera una confesión. *El Pueblo de Puerto Rico* contra *Francisco
Rivera,* dictamen emitido en 25 de junio de 1904."

Véase también el dictamen emitido por este Tribunal
en la causa de *El Pueblo de Puerto Rico* contra *Eligier
y otro,* resuelta en 20 de noviembre de 1905.

Las referencias hechas por el abogado defensor del acu-
sado, en su informe oral y en su alegato, á los casos de *Sex-
ton* contra *Sexton* 56 Cal. 426; y el de *Carroll* contra
*Stork,* 57 Cal. 367 tienen aplicación solamente á testimo-
nio de referencia y en casos civiles; por lo tanto, no pue-
den ser considerados como autoridades en el caso de que
se trata.

Por supuesto, el testimonio de referencia no es admisi-
ble contra el acusado en ningún caso; pero las confesiones
no constituyen testimonio de referencia. El Sr. Greenleaf,
en su excelente obra sobre las pruebas, describe el testimo-
nio de referencia en la siguiente forma:

"Sec.—El Término "testimonio de referencia" se usa con rela-
ción así á lo escrito como á lo hablado, y en su sentido legal deno-
ta aquella clase de pruebas que no derivan su valor solamente del
crédito que ha de darse al testigo mismo, sino que descansa también,

en parte, en la veracidad y competencia de alguna otra persona. El testimonio de referencia, tal como se ha descrito, es uniformemente considerado como inadecuado para establecer algún hecho específico, que por su naturaleza es susceptible de ser probado por testigos que puedan hablar por propio conocimiento. El que esta clase de testimonios suponga algo mejor que pudiera aducirse en el caso particular, no es el único motivo para su exclusión. Su debilidad extrínseca, su insuficiencia para satisfacer la mente con respecto á la existencia del hecho, y los fraudes que pueden realizarse bajo su cubierta, se combinan para apoyar la regla de qué testimonios de referencia son completamente inadmisibles."

1 Greenleaf sobre Evidencia, S. 99.

La sustancia de esta sección, ó á lo menos una parte de ella, aparece en un dictamen emitido por el Juez Presidente Marshal, en la causa de *Mima Queen* v. *Hepburn,* 7 Cranch 290; y la misma ha sido citada aprobatoriamente por el Tribunal Supremo de los Estados Unidos, hablando por conducto del juez Sr. Harlan, en la causa de *Hept* v. *Utah,* relatada en 110 U. S. 581.

El anterior dictamen emitido en esta causa, y al que ya nos hemos referido, citamos prolijamente, con relación á la materia de confesiones de culpabilidad, de la obra "Cooley on Constitutional Limitations", y así mismo hicimos referencia en aquel dictamen á la obra de "Greenleaf en Evidence". (Véase la jurisprudencia criminal de 1904 pp. 56, 57, 58, 59 y 60.) El eminente autor últimamente mencionado, en su obra sobre las pruebas, trata el asunto como sigue:

"Sec. 214.—Valor de las confesiones. Pero aquí también, como hemos observado anteriormente con respecto á las admisiones, la prueba de confesiones verbales de culpabilidad, debe aceptarse con muchísima cautela, pues, además del peligro que se corre de equivocarse, debido á una falsa concepción de las declaraciones del testigo, la falsa aplicación de las palabras, el dejar la parte de expresar claramente lo que quiso decir, y la falta de memoria, debe tenerse presente que el ánimo del mismo preso, se encuentra oprimido por lo calamitoso de su situación, y que muchas veces influyen en

su ánimo motivos de esperanza ó miedo á hacer una falsa confesión. También el celo que tan generalmente prevalece, para descubrir los delincüentes, y especialmente en los casos de culpabilidad agravada, y la fuerte disposición de las personas que se ocupan en buscar pruebas, de confiar en leves motivos de sospecha, cuyas sospechas exageran hasta tenerlas por prueba suficiente, junto con el carácter de las personas que necesariamente son llamadas como testigos, en casos de delitos ocultos y atroces; todo esto tiene el efecto de disminuir el valor de esta clase de prueba, y algunas veces es el motivo por el cual se rechaza, cuando en causas civiles se hubiera aceptado. Debe también tenerse presente la valiosa observación del Señor Juez Foster, de que: "En el curso ordinario de las cosas, esta prueba no debe ser reputada por esa clase de prueba de hechos sencillos con que puede ser y muchas veces es confrontada."

"Sec. 215.—Sujetas á esta cautela al recibirlas y apreciarlas, está generalmente concedido que las deliberadas confesiones de culpabilidad, son de las pruebas más eficaces comprendidas en la Ley. El valor de éstas depende de la suposición de que son deliberadas y voluntarias, y de la presunción de que una persona racional no admitirá hechos que puedan perjudicar sus intereses y seguridad, á no ser que lo haga por encontrarse obligado á ello, por ser impulsado por la verdad y su propia conciencia. Tales confesiones hechas de esta manera á cualquiera persona, en cualquier momento, y en cualquier sitio, con posterioridad á la comisión del delito, y con anterioridad á la celebración de su juicio, ante el Magistrado, se aceptan como evidencia, de acuerdo con la ley común, como pertenecientes á pruebas de culpabilidad. También, las confesiones, lo mismo que las admisiones, pueden inferirse de la conducta del preso, y de su aquiescencia silenciosa á las manifestaciones de otras personas con respecto á él, en su presencia; siempre que no se hayan hecho bajo circunstancias que impidieran el que las contestara. El Jurado debe determinar, con atención á las circunstancias de cada cual, la fe que se puede tener en tales manifestaciones. Las confesiones que se hagan ante el Magistrado, ó durante el tiempo que esté preso el acusado, son afectadas por ulteriores condiciones."

1 Greenleaf on Evidence, Secciones 214 & 215.

Véase también *People* v. *McCrea* 32 Calf. 98; *Com.* v. *Samborn* 116 Mass. 61; *State* v. *Brown* 48 Iowa 382; *State* v. *Smith* 30 La. Ann. 457 *y* *Campbell* v. *State* 55

Ala. 70, y Autoridades citadas bajo la palabra "Confesión" en 1 Bouvier's Law Dictionary. pp. 387 & 388.

Puesto que las declaraciones hechas por los testigos Carbó y Lugo Viña, no podían ser consideradas como testimonio de referencia, y puesto que no se demostró que las confesiones con respecto á las cuales declararon, estaban comprendidas dentro de las excepciones establecidas por los autores comentaristas anteriormente citados, según fué resuelto por los Tribunales mencionados en la presente, debemos declarar también que esta objeción por parte del acusado, contra la prueba de sus confesiones presentada contra él, no puede considerarse como bien fundada. Tal prueba es claramente admisible según todas las reglas legales que rigen en tales casos.

V.—El quinto punto del pliego de excepciones presentado en el Tribunal inferior, se refiere á una pregunta dirigida á Carbó, por el abogado del acusado, y que fué desechada por el Tribunal. El testigo Carbó había declarado que el acusado le dijo que cuatro personas le habían convidado el día de autos para ir á un baile en Arroyo, y que antes de partir hacia allí, le habían dado algo que beber: y en este punto el abogado del acusado preguntó al testigo, si estas personas que el acusado había mencionado, eran personas á quienes él, por sus antecedentes, juzgaba ser capaces de tomar parte en algún crimen. Esta pregunta era claramente inadmisible porque la contestación hubiera solamente hecho manifiesta la opinión del testigo con respecto al carácter de las personas mencionadas, que no habían sido suficientemente identificadas con la causa; y su opinión aún en el caso de que se hubiera permitido expresarla ante el jurado, no podía ser propiamente considerada por él, ni á favor ni en contra del acusado. El jurado debe formar sus propias opiniones por los hechos de la causa; por esta razón, y otras claramente manifiestas, procedía excluir la pregunta. 1 Greenleaf on Evidence,

Section 441 *Evans* v. *People* 12 Mich. 35 *Bates* v. *Sharon* 45 Vt. 481.

VI.—También se objetó en el acto del juicio ante el Tribunal inferior, que se le había permitido al practicante que hizo la autopsia, declarar con respecto á la misma y á las heridas del cuerpo del interfecto, y sobre otros extremos de esa naturaleza, afirmándose por el abogado del acusado, que solamente un médico debidamente facultado y graduado en una escuela de medicina, podría declarar propiamente sobre tales materias. Nosotros no conocemos ninguna regla legal que prohiba á persona alguna hacer declaraciones sobre hechos de que tenga conocimiento. No consta que se haya solicitado del practicante, ni que éste haya dado, una opinión profesional. No es necesario un diploma para habilitar á una persona, que tenga el conocimiento necesario, para servir de testigo en el juicio de una causa criminal. Se ha permitido á los profanos declarar con respecto á la sanidad de juicio ó demencia de personas sometidas á un proceso, aportando los hechos de los cuales el jurado pudiera deducir sus propias conclusiones con respecto á las cuestiones de que se tratara. Era claramente permisible por lo que aparece de los autos, que el practicante declarase con respecto á las heridas, la apariencia del cadáver, otras materias que fueron esclarecidas por él en el juicio de esta causa.

VII.—También se afirma con empeño por el eminente abogado defensor del acusado, y á favor de este ultimo, que se le debía conceder á éste un nuevo juicio: Primero: Porque el veredicto era contrario á la ley y á las pruebas; y segundo, por errores cometidos en las instrucciones dadas al jurado, por el Tribunal.

El primer punto no puede considerarse por este Tribunal, porque no existe en los autos exposición de hechos, ni pliegos de excepciones, que pudieran informarnos con respecto á los hechos probados en el juicio de esta causa.

Véase la causa de *El Pueblo de Puerto Rico* contra *Eligier et al,* resuelta por este Tribunal, en 20 de noviembre del corriente año. A menos que tengamos los hechos á la vista, no podemos decir que el veredicto del jurado sea contrario á las pruebas, ni aún á la ley, porque la ley es considerada en relación con las pruebas, y debe ser aplicable á las mismas. A falta de una exposición de hechos ó de un pliego de excepciones, demostrándonos patentemente las pruebas contradictorias al veredicto, tal objeción no puede ser considerada. No tenemos á la vista absolutamente nada en que pudiéramos fundar una decisión con respecto á la suficiencia ó efecto de las pruebas aducidas en el juicio. Toda presunción en el sentido de la corrección de la sentencia dictada por el Tribunal inferior, debe favorecerse por este Tribunal; y es imposible que el acusado demuestre que el veredicto fué contrario á la ley y á las pruebas, sin que traiga á la vista á lo menos alguna parte esencial de las pruebas presentadas al jurado, para su consideración, que pudiera conceptuarse incompatible con el veredicto.

En cuanto á los errores cometidos en las instrucciones dadas al jurado, el pliego de excepciones no demuestra que se haya presentado por el acusado, objeción alguna contra dichas instrucciones ni se ha demostrado objeción alguna de otra manera. Parece que se han dado todas las instrucciones solicitadas por el acusado, á excepción de una sola que era claramente inadmisible, por no ser una exposición exacta de la ley con respecto al caso. No se presentó ninguna excepción contra su denegación por el Tribunal, ni se hizo mención de ella en el informe oral ante este Tribunal; y por lo tanto, pueden considerarse como abandonadas todas las objeciones presentadas contra la resolución del Tribunal. No encontrándose en los autos, pliego de excepciones que comprenda las pruebas ni exposición de hechos, el Tribunal debe considerar las

instrucciones como correctas, á menos que sean mani-
fiestamente erróneas bajo cualquier estado de hechos ima-
ginables. Es un principio general bien establecido, el que
la parte que alegue errores en el procedimiento de un
Tribunal, debe demostrarlos, haciendo referencia á los
autos. *People* v. *Gilbert* 60 Cal. 112 *People* v. *King*
27 Calf. 514. *People v. Levison* 16 Calf. 100.

Una cuidadosa lectura de toda las instrucciones dadas
por el juez sentenciador, demostrará que dichas instruc-
ciones fueron amplias y completas, comprendiendo todos
los extremos de la causa. El observa cuidadosamente las
indicaciones hechas en el dictámen emitido por este Tri-
bunal, en la anterior vista de esta causa, que tuvo lugar
en junio de 1904. Todos los grados de asesinato fueron
debidamente explicados al jurado, y lo mismo se hizo
con respecto al delito de homicidio. Por cuanto la acusa-
ción imputó, y los hechos, hasta donde han podido fijarse,
demuestran que el asesinato de Severo Lorenzo fué co-
metido con ocasión de robo, este delito fué también ex-
plicado al jurado, por el Tribunal. Además, esta fué la
circunstancia que se tuvo en cuenta para calificar el ase-
sinato como asesinato en primer grado. Véase el Código
Penal, sección 201. Esto requería que el delito de robo
fuese definido en las instrucciones dadas por el Tribunal,
al jurado. El jurado fué instruído con respecto á la fuer-
za y efecto de la prueba indiciaria y la cautela con que de-
be ser recibida. También fué informado ampliamente con
respecto á la ley sobre la duda razonable, y ciertamente
las instrucciones sobre este particular, fueron tan favo-
rables como el acusado razonablemente podía exigir. Es
difícil ver, después de un rígido examen, punto alguno en
que el acusado pudiera señalar un error en las instruccio-
nes. Por todas estas razones, debe declararse que la mo-
ción, solicitando un nuevo juicio, fué debidamente deses-
timada.

VIII.—El distinguido abogado defensor, en su celo por su patrocinado, también presentó ante este Tribunal, con gran ahinco, una objeción contra la sentencia de muerte pronunciada por el Tribunal contra el acusado, después de su convicción, y especialmente contra la frase usada por el juez: "Que Dios recoja su alma con benignidad." Cita en apoyo de su objeción varias decisiones de los tribunales de los Estados Unidos, especialmente las que se encuentran en 82 Federal Reporter, 885; 87 Federal Reporter, 172; 101 Federal Reporter, 817; 102 Federal Reporter, 473; 137 U. S. 483; 143 U. S. 442; 146 U. S. 271; 151 U. S. 242. Ninguna de estas autoridades, si se las examina cuidadosamente, apoyan la proposición sostenida por el abogado defensor. En un caso, á saber, Cross Ex parte, que fué una solicitud presentada ante el Tribunal Supremo de los Estados Unidos, para que se expidiera un auto de *Habeas Corpus,* y cuyo caso está relatado en el tomo 146, página 272, aparece que esta fórmula fué empleada por el Tribunal sentenciador, al dictar sentencia. Dicha causa fué presentada tres veces ante el citado Tribunal, ya en una forma, ya en otra, y nunca se presentó este punto contra la sentencia; sin embargo, dicha sentencia que contenía esa frase fué aprobada en cada ocasión, con el completo conocimiento por parte del Tribunal, del uso de la misma. Todas las decisiones de tribunales de último recurso, tienden á demostrar que tales frases, cuando se hace uso de ellas, para sentenciar á un reo convicto, á la pena extrema de la ley no forman propiamente parte de la sentencia. Con motivo de una cuestión análoga, se ha enunciado expresamente por la autoridad más alta, en el dictámen emitido en la causa de *Schwab* v. *Berggren,* 143 U. S. 451, que es materia bien establecida, que el tiempo y lugar de la ejecución en una causa que apareje pena capital, no forman estrictamente parte del fallo ó sentencia, á no ser que hayan

sido expresamente declarados tal por una ley. El juez
Sr. Harlan, al leer el dictamen de la corte en dicha causa
cita 1 *Chitty*, 780-787; *Costley* v. *Com*. 118 Mass. 32;
*Holden* v. *Minn*. 134 U. S. 483. Desde tiempo inmemorial
ha sido usual en todos los paises que se habla el idioma in-
glés, usar esta fórmula; "May God have mercy on your
soul" ("Que Dios tenga misericordia para con su alma")
al pronunciar la sentencia de muerte contra un reo con-
victo. Por cuanto yo he podido cerciorarme, dicha frase
nunca ha sido declarada impropia, y mucho menos un
error esencial. Y como las leyes de Puerto Rico guardan
silencio sobre este punto, la invocación puede usarse ú
omitirse á la discreción del juez sentenciador.

IX.—Finalmente, en este caso se puede hacer referencia
á una ley de la Asamblea Legislativa de Puerto Rico, re-
lativa á revocaciones de sentencias en causas criminales,
aprobada en 30 de mayo de 1904. Véanse las leyes de 1904,
P. R., Sesión Extraordinaria, página 16. Dicha ley dispo-
ne:

"Siempre que resultare de los autos, en alguna causa criminal,
apelada á la Corte Suprema, que cualquier requisito legal haya si-
do desatendido por el Tribunal sentenciador, no se anulará la sen-
tencia, á menos que el error que de los autos resultare, tendiere á
perjudicar los derechos de cualquiera de las partes, y se hubiere
interpuesto la debida excepción en el Tribunal sentenciador; *dis-
poniéndose, sin embargo*, que el Tribunal de Apelación podrá cono-
cer de errores fundamentales que aparecieren en los autos, aún
cuando no se hubiere interpuesto objeción á ellos, y fallar sobre los
mismos con arreglo al derecho que de los hechos se desprendiere."

Ciertamente, no parece haber ningún error fundamen-
tal en el presente caso; y revisando, en las páginas ante-
riores, todos los errores alegados y mencionados en el
pliego de excepciones, ó señalados en el informe oral, no
hemos podido encontrar error alguno que exija la revoca-
ción del fallo y sentencia pronunciados contra el acusado
en el tribunal inferior. No se le negó ningún derecho sus-

tancial. El juicio fué justo é imparcial; el acusado tuvo la asistencia de un abogado defensor en el Tribunal sentenciador y en la apelación; él se hallaba resguardado por todas las salvaguardias de la ley; y un jurado elegido por él mismo, después de la debida deliberación, le declaró culpable del delito de asesinato en primer grado, y este solemne veredicto fué aprobado por un juez hábil é imparcial, y la sentencia de muerte fué debidamente pronunciada contra dicho acusado.

Por las razones consignadas en las páginas que preceden, la sentencia dictada por el Tribunal de Distrito de Guayama, el 6 de abril de 1905, condenando al acusado á sufrir la pena de muerte, debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados, Hernández, Figueras y Wolf.