EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANDRÉS COLÓN OBREGÓN, acusado y apelante.

*Número:* CR-73-82     *Resuelto:* 31 de mayo de 1974

*R. N. Ponce de Sánchez-Rivoleda,* abogada del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 17 de junio de 1966 de dictó sentencia contra Andrés Colón Obregón, condenándosele a cumplir una pena de cinco a diez años de presidio con trabajos forzados en cada uno de los cargos consistentes en la alegada posesión y dominio, transportación y ocultación y venta de heroína. El caso no se somete a este Tribunal hasta el 17 de abril del corriente año debido a extraordinarias tardanzas en la solicitud de la preparación del récord, en la transcripción del mismo y en otros trámites. El caso ilustra en este respecto la necesidad de acelerar notablemente los procedimientos para impedir de-

moras que afectan los derechos del acusado y perjudican la administración de la justicia y su buen nombre. La ventilación en grado apelativo de los asuntos criminales debe sujetarse a las normas de premura requeridas en buena civilización por toda cuestión que envuelva la libertad de un ser humano.

El único error imputado fue que no se demostró la culpabilidad del acusado más allá de toda duda razonable.

La prueba de cargo fue brevemente como sigue. El testigo principal fue el agente encubierto José Francisco Barreto. Barreto trabajaba con la Oficina de Investigaciones Especiales del Departamento de Hacienda por contrato y su compensación dependía de la aceptabilidad de sus servicios en cada caso en particular. El día de los hechos, Barreto y el agente Gerardo Mendoza, quien murió antes del juicio, se dirigieron a un barrio de Mayagüez donde encontraron al acusado, a quien Barreto conocía. Le preguntaron si tenía heroína y él contestó que sí. Según Barreto, Mendoza le pidió entonces dos sobres al acusado, obteniéndolos y pagando por ellos. Al día siguiente, Barreto y Mendoza entregaron la evidencia a las autoridades correspondientes, colocando Mendoza sus iniciales en los sobres comprados, junto a las de su supervisor Reyes Soto Ortiz. Barreto firmó entonces una declaración jurada ante el supervisor Soto Ortiz relatando lo anterior. Como dato adicional debe señalarse que Barreto confesó haber usado drogas como hasta el 1960, algunos años antes de la transacción.

También declaró el Sr. José Núñez Barber, Director de la Oficina de Investigaciones Especiales del Departamento de Hacienda, quien constató la contratación del agente Barreto. Se presentó igualmente el testimonio del señor Reyes Ortiz, quien confirmó el status de los agentes Gerardo Mendoza y José Francisco Barreto, así como la entrega de la heroína, la colocación de las iniciales y el pago a Barreto.

La prueba de defensa consistió principalmente en el·testimonio del propio apelante, quien negó haber estado en el sitio de los hechos en la fecha señalada, ni haberle vendido heroína a Mendoza, ni ser adicto o traficante. Explicó que la transacción que llevó a cabo con Mendoza y Barreto fue la venta de un automóvil. También señaló el apelante que Barreto se había comprometido con él alegadamente a testificar en su favor, antes de la muerte de Mendoza.

Los otros dos testigos de la defensa declararon básicamente que el acusado tenía un Volkswagen a la venta y que en junio dos hombres se lo fueron a comprar. No se identificó a tales hombres. También señaló uno de dichos testigos, Juan de la Cruz Acosta González, que él estaba preso en la cárcel de Aguadilla por infracción a la ley de narcóticos y que el testigo Barreto, preso entonces allí, le había dicho que él era adicto y que no sabía nada de la transacción de Colón Obregón.

En el proceso de instrucciones al jurado, no se solicitó por la defensa instrucción alguna relativa a la alegada adicción a drogas del testigo de cargo Barreto, ni sobre los hechos probados relativos al pago del informante Barreto.

■ En vista de los hechos expuestos concluimos que no se cometió un error claro o manifiesto en la apreciación de la prueba que justifique que este Tribunal intervenga con la apreciación de la misma efectuada por el juzgador de instancia. *Pueblo* v. *Rodríguez González*, 101 D.P.R. 1 (1973).

■ No podemos, sin embargo, dejar de expresarnos sobre una importante cuestión que suscita la controversia presente. La cuestión se refiere a las precauciones, si algunas, que deben tomarse en la emisión de las instrucciones al jurado en casos en que el informante es un adicto o recibe paga por la información que suministra. Nos pronunciamos sobre este asunto a pesar de no haberse requerido instrucciones al efecto durante el juicio ni haberse hecho planteamiento de error ante este Tribunal sobre el problema, por la facultad

que nos asiste de no limitarnos a examinar solamente in- fracciones de ley o quebrantamientos de forma según fueren señalados, en casos en que pueda haberse cometido un error de extrema sustantividad. *Pueblo* v. *Túa,* 84 D.P.R. 39, 61 (1961); *cf. Pueblo* v. *Del Valle,* 91 D.P.R. 174, 179 (1964).

Algunos comentaristas sobre el tema consideran que debe examinarse cautelosamente por el jurado el testimonio de cualquier informante en la categoría de adicto a drogas o confidente a sueldo. Berkau, Thomas S.: *Evidence—Testimony of Government Informers in Narcotics Cases,* 51 N.C. L. Rev. 911 (1973). A juicio de estas autoridades, es obligatorio instruir al jurado sobre este particular, se solicite o no por la defensa. *United States* v. *Kinnard,* 465 F.2d 566, 574 (D.C. Cir. 1972).

█ No compartimos el anterior criterio. Los confidentes, informantes o agentes encubiertos son parte esencial de todo esfuerzo para combatir el tráfico de drogas. *The President's Commission on Law Enforcement and Admission of Justice, Task Force Report: Narcotics and Drug Abuse,* 1967, pág. 8. En las circunstancias señaladas, en que se trata de informantes adictos o a sueldo, especialmente cuando es contingente su pago, su testimonio debe escudriñarse para determinar su confiabilidad, mas la doctrina prevaleciente es al efecto de que las instrucciones al jurado sobre dicho particular deben solicitarse expresamente. De no requerirse la transmisión de las mismas por la defensa, no constituye error su omisión. *Sartain* v. *United States,* 303 F.2d 859 (9th Cir. 1962); *Orebo* v. *United States,* 293 F.2d 747 (9th Cir. 1961). Debemos reiterar también que el testimonio de un informante pagado, siempre que su testimonio no sea básicamente increíble o de otro modo insustancial, no exige prueba de corroboración. *Pueblo* v. *Acosta Escobar,* 101 D.P.R. 886 (1974). Tal es la regla prevaleciente también en muchas otras jurisdicciones. *United States* v. *House,* 471 F.2d 886 (1st Cir. 1973); *United States* v. *Strauss,* 443 F.2d 986 (1st

Cir. 1971), *cert. den.* 404 U.S. 851; *Davis* v. *United States,* 411 F.2d 1126 (5th Cir. 1969); *United States* v. *Smith,* 459 F.2d 12 (4th Cir. 1972). La prueba de cargo en el caso de instancia fue coherente y la cadena de la evidencia se eslabonó lo suficientemente bien para no justificar nuestra intervención con el criterio del juzgador o exigir prueba corroborante.

*Por los fundamentos expuestos, se confirmará la sentencia apelada.*