EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ ENRIQUE CASIANO VÉLEZ, acusado y apelante; EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR DE JESÚS TORO, acusado y apelante.

*Números:* M-76-28, M-76-30     *Resueltos:* 13 de agosto de 1976

*Héctor Lugo Bougal,* abogado de los apelantes en los casos M-76-28 y M-76-30; los abogados de El Pueblo no comparecieron.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Los hechos procesales que motivan el incidente ante nos [1] son sencillos: El apelante José E. Casiano Vélez interpuso apelación contra la sentencia condenatoria el 20 de mayo de 1974 habiéndose ordenado la transcripción de evidencia el 15 de octubre de dicho año. El apelante Héctor De Jesús radicó su apelación el 13 de mayo de 1975 y ese mismo día la sala sentenciadora dispuso se preparara la transcripción de la evidencia.

En vista de que habían transcurrido aproximadamente períodos de dos y un año, respectivamente, sin que se hubiesen preparado ni elevado las transcripciones, emitimos el 13 de abril de 1976 una Resolución disponiendo:

"1. Se concede al apelante un plazo de 60 días, contados desde la notificación de la presente, para que prepare una exposición narrativa de aquella parte de la prueba que todavía no hubiese sido transcrita, en la forma que dispone la Regla 15 (d) de nuestro Reglamento.

---

[1] Hemos optado por consolidar el presente dictamen por plantear el incidente procesal cuestiones comunes y estar ambos apelantes representados por el mismo abogado.

2. Una vez aprobada la transcripción de evidencia ya terminada, y la exposición narrativa de la prueba que ahora ordenamos, el apelante someterá original y tres copias de cada una a la Secretaría del Tribunal de Instancia, de forma que ambas puedan ser elevadas a este Tribunal, junto con el expediente original, a tono con las disposiciones de la Regla 35(d) de nuestro Reglamento."

A una moción del apelante Casiano Vélez del 20 de mayo de 1976 proveímos:

"Vista la moción presentada por el apelante el 28 de abril último, cumpla el apelante nuestra resolución de 13 de abril de 1976 preparando la exposición narrativa de la prueba con los medios a su disposición inclusive las notas del Juez Felipe Ortiz Ortiz quien presidió el juicio. No ha lugar a la alternativa de transcripción de evidencia propuesta por el acusado en su referida moción."

Mediante mociones adicionales los apelantes reiteran la solicitud de transcripción de la prueba oral y objetan nuestras resoluciones aduciendo en síntesis los siguientes fundamentos: Que a la fecha que se celebró la vista del caso existía legislación concediendo al acusado el derecho de apelación ante este Tribunal ". . . fundando su razonamiento jurídico sobre la base de una transcripción fiel y exacta de la evidencia que desfiló en el proceso criminal", por lo que resultaban inconstitucionales nuestras órdenes al menoscabar ". . . indirectamente un derecho sustantivo del acusado, ya adquirido . . . ." en virtud de lo dispuesto en la Sec. 6, Art. V de la Constitución del Estado Libre Asociado de Puerto Rico; que la jurisprudencia vigente del Tribunal Supremo de los Estados Unidos ha establecido que es inconstitucional denegar una transcripción de evidencia en una apelación ordinaria de un caso criminal; y que debido al tiempo transcurrido, falta de memoria y al haber descansado en un derecho adquirido a la fecha de la ventilación del proceso ". . . no le es posible preparar con fidelidad y exactitud la Exposición Narrativa . . . ." de lo acaecido en la vista del caso en su fondo.

# I

La naturaleza de los planteamientos exige que apuntemos brevemente las premisas básicas sobre las cuales descansa el derecho de apelación en casos criminales en nuestra jurisdicción y cómo este derecho afecta la transcripción de la prueba oral.

En *Pueblo* v. *Prieto Maysonet*, 103 D.P.R. 102 (1974), por voz del Juez Asociado Señor Irizarry Yunqué señalamos:

"La apelación en el Derecho penal puertorriqueño no es automática como lo es, por ejemplo, en el estado de California en casos en que se impone la pena capital. Véase *Chessman* v. *Teets*, 354 U.S. 156 (1957). Nuestro Derecho procesal es rogado. Se presume que los tribunales actúan con corrección. *Pérez Aldarondo* v. *Tribunal Superior*, 102 D.P.R. 1 (1974); *Pueblo* v. *Reyes Morales*, 93 D.P.R. 607, 628 (1966); *Escalera* v. *Armenteros*, 74 D.P.R. 11 (1952). Compete al apelante la obligación de demostrar lo contrario. *El recurso de apelación no es una expedición de pesca en el mar de la transcripción de las pruebas. Las pruebas se transcriben para demostrar que se han cometido determinados errores y no para ser examinadas por el abogado del apelante con miras a determinar si hay en ellas base para sostener el recurso de apelación. Se apela cuando se tiene la convicción de que se han cometido errores que ameritan la revocación. No se apela por apelar.*" (Énfasis suplido.)

Adicionalmente, debemos destacar: (1) el principio prevaleciente desde inicios de siglo de que simples errores, que no afectan los derechos sustanciales de un acusado, no conllevan la revocación de la sentencia, *Pueblo* v. *San Miguel*, 5 D.P.R. 177 (1904); *Pueblo* v. *Bird*, 5 D.P.R. 189 (1904); *Pueblo* v. *Rivera*, 9 D.P.R. 505 (1905); (34 L.P.R.A. sec. 1171); (2) la vigencia de la norma, como razón para desestimar una apelación, de que ". . . el recurso es frívolo" (Regla 212(d) de Procedimiento Criminal en vigor desde el 30 de julio de 1963); (3) y la reiteración de la regla de que ordinariamente no intervendremos con la apreciación de la prueba y

credibilidad estimada por el jurado o por el Tribunal de Derecho.

A la luz del marco doctrinario expuesto, examinemos los méritos de los planteamientos. La Regla 199 de las de Procedimiento Criminal reza:

*"Salvo lo que más adelante se dispone,* las apelaciones se ventilarán con vista de los documentos originales que obren en autos y *de la transcripción de la prueba oral,* los que constituirán el expediente en apelación." (Énfasis suplido.)

Las Reglas 200 y siguientes regulan el trámite de designación de la prueba oral total y parcial, y la 208, que fija un método sustituto a la transcripción de las notas taquigráficas en el perfeccionamiento de una apelación, dispone:

"En caso de que no se hubieren tomado notas taquigráficas de la prueba o de los procedimientos durante una vista o juicio, *o que por cualquier razón dichas notas no pudieren transcribirse,* el apelante podrá preparar una exposición de la prueba o una relación de los procedimientos, usando para ello los mejores medios disponibles, incluyendo su recuerdo, para ser usada *en lugar de una transcripción taquigráfica.* Esta exposición o relación se notificará al fiscal, quien deberá presentar sus objeciones o proponer enmiendas, dentro de los diez días de notificado. Inmediatamente después, dicha exposición o relación con las objeciones o enmiendas propuestas, se someterá al Tribunal Superior para su resolución y aprobación, y el secretario de dicho tribunal las incluirá, así resueltas y aprobadas, en el expediente de apelación." (Énfasis suplido.)

En *Pueblo* v. *Prieto Maysonet,* supra, al interpretar la citada regla dijimos:

"La Regla 208 tiene como antecedente inmediato el Art. 356 del Código de Enjuiciamiento Criminal aprobado el primero de marzo de 1902, 34 L.P.R.A. sec. 1081, derogado por la Regla 254 de Procedimiento Criminal, hoy redesignada como Regla 255 por la Ley Núm. 199 de 23 de julio de 1974. Dicho Art. 356 requería que para perfeccionar su apelación el apelante preparara y sometiera para aprobación del juez sentenciador, dentro de los diez días siguientes al archivo de la sentencia, un pliego de ex-

cepciones y exposición del caso. Como alternativa permitía al apelante solicitar una transcripción de las declaraciones ofrecidas y tomadas, de las pruebas practicadas, y de las resoluciones, actos y manifestaciones del tribunal y de las objeciones del fiscal y del abogado y cuestiones con ellas relacionadas. En la práctica se invirtió el procedimiento y se generalizó el uso del método alterno, es decir, la transcripción. La Regla 208 parte de ese supuesto y recurre al método de exposición de la prueba o relación de los procedimientos como sustituto del método de transcripción de las pruebas.

*Es inescapable la conclusión de que bajo el Código de Enjuiciamiento Criminal no era, ni bajo las Reglas de Procedimiento Criminal es, imprescindible, para el perfeccionamiento de la apelación, transcribir las pruebas.*" (Énfasis suplido.)

▆ La interpretación armoniosa y racional de las reglas citadas nos lleva a concluir que no es correcta la proposición de que nuestro ordenamiento jurídico reconoce, *como derecho absoluto* la obtención de las notas taquigráficas y de que ello pueda caracterizarse como un derecho sustantivo. Desde el año 1963, hasta el presente, la consecución de tales notas, no sólo está condicionado al cumplimiento estricto por la parte concernida de los trámites de rigor establecidos en las reglas, sino también implícitamente en que tales notas sean susceptibles de ser preparadas y producidas *con razonable prontitud.* (²)

Estamos comprometidos a inyectarle rapidez a los procedimientos judiciales en primera instancia y a darle máxima vigencia al concepto constitucional de "juicio rápido". En la medida en que podamos extender su espíritu a la etapa apelativa, para beneficio de los convictos apelantes y de la sociedad, lo haremos. Así lo anticipamos en *Pueblo* v. *Colón Obregón,* 102 D.P.R. 369 (1974), en el cual, en vista de la extraordinaria tardanza de ocho (8) años transcurrida en perfec-

---

(²) La Sec. 5 de la Ley del 10 marzo de 1904 (32 L.P.R.A. sec. 1489) quedó afectada por las Reglas de Procedimiento Criminal antes referidas, y no constituye fuente estatutaria para sostener la existencia de un derecho irrestricto a una transcripción de evidencia.

cionarse el recurso por razones del trámite de la transcripción, indicamos:

"El caso ilustra en este respecto la necesidad de acelerar notablemente los procedimientos para impedir demoras que afectan los derechos del acusado y perjudican la administración de la justicia y su buen nombre. La ventilación en grado apelativo de los asuntos criminales debe sujetarse a las normas de premura requeridas en buena civilización por toda cuestión que envuelva la libertad de un ser humano."

Mediante Resolución del 14 de agosto de 1974 adoptamos una enmienda al efecto a la Regla 10 (f) de nuestro anterior Reglamento disponiendo:

"(f) En caso de que el taquígrafo que hubiere tomado las notas del juicio falleciere, se incapacitase o se ausentare, hechos éstos que deben probarse a satisfacción de este Tribunal, y no fuere posible radicar la transcripción de la evidencia, *o en casos en que este Tribunal, con miras a acelerar los procedimientos o servir de otro modo los fines de la justicia, así lo ordenara,* el apelante o el recurrente en apelación, dentro de un término razonable que a esos efectos le conceda el tribunal de instancia, *o este Tribunal en los casos que así lo hubiere ordenado,* preparará una exposición en forma narrativa de la evidencia que se hubiere presentado y pliego de excepciones o de la prueba o relación de los procedimientos que disponen la Regla 54.11 (a) de Procedimiento Civil y la Regla 208 de Procedimiento Criminal que deberá ser aprobado y certificado por el juez que conoció y resolvió el asunto." (Lo subrayado constituye la enmienda adicionada.)

En 10 de diciembre de 1974, fecha en que certificamos *Pueblo* v. *Prieto Maysonet,* supra, emitimos también la opinión *Per Curiam* en el caso de *Pueblo* v. *Rodríguez Irizarry,* 103 D.P.R. 98 (1974) y expresamos lo siguiente:

"Un solo error apunta el apelante: no haber renunciado expresa e inteligentemente al derecho a ser juzgado por jurado.

Para sostener este apuntamiento, el apelante acompaña el récord taquigráfico completo de todas las incidencias del juicio (252 páginas a maquinilla) cuando el incidente a que se contrae

su recurso se transcribe en sólo tres páginas. No cumple con su deber un abogado que hace transcribir todas las notas taquigráficas de un juicio, ocasionando gastos a su cliente y que además le toma el tiempo al taquígrafo que puede dedicarlo a otras transcripciones, causando dilación en la tramitación de otros recursos, cuando sólo necesita la transcripción de un incidente específico; especialmente cuando es el mismo abogado el que representó al apelante en el tribunal de instancia."

Y recientemente, en la opinión del caso de *Pueblo* v. *Pérez Santaliz*, 105 D.P.R. 10 (1976), expusimos:

"No podemos pasar por alto que el apelante obtuvo innecesariamente toda la transcripción de la prueba a pesar de que afirmativamente expresa en su alegato que los errores señalados no tienen relación alguna con la prueba. Ello ha causado la demora indebida del trámite de apelación. La transcripción inútil de prueba ejemplificada por este caso, es la mayor causa de congestión y demora en el perfeccionamiento del proceso apelativo. Véase *Rodríguez* v. *Commonwealth Insurance Co.*, 104 D.P.R. 879 (1976).

La actuación del abogado del apelante al recargar indebidamente el trámite judicial con una transcripción total de la prueba que era evidentemente fútil revela una actitud desconsiderada hacia los procedimientos judiciales que merece nuestra más enérgica reprobación."

La justificación de la promulgación de la Regla 10 (f) antes transcrita, reafirmada en la Regla 15 (d) del Reglamento vigente, se basa no sólo en la interpretación de las Reglas de Procedimiento Criminal, sino en los innumerables fallos judiciales de este Tribunal y los libros de Registro de Causas Criminales de su Secretaría, que testimonian elocuentemente la tardanza tradicional e irrazonable habida en adjudicar las apelaciones criminales radicadas, debido esencialmente a la demora en el perfeccionamiento de los recursos por razón de la lentitud en la preparación de las transcripciones.

Por vía ilustrativa, tomamos conocimiento judicial del contenido exacto de nuestros Registros de Causas Criminales desde el 1ro. de enero de 1971 al 31 de diciembre de 1975.

A tal efecto, acopiamos la información relacionada con la fecha en que se dictó cada sentencia en el Tribunal Superior, la hemos confrontado con la fecha en que finalmente se elevaron los autos y la transcripción, [3] y tabulado científicamente la data estadística pertinente.

El cuadro estadístico que unimos corrobora ampliamente el fenómeno de morosidad que ha aquejado el trámite sobre transcripción de evidencia. Se desprende que de un total de 593 apelaciones criminales, durante el período de cinco (5) años, solamente en 97 casos (16.4%) las transcripciones de evidencia estuvieron listas en el término razonable menor de seis meses; en los restantes 496 casos (83.6%) el término osciló entre 6 meses y 4 años, de los cuales más de la mitad, 327 casos (55%), tomaron entre uno (1) y cuatro (4) años.

Entre la combinación de factores múltiples que han intervenido y propiciado esta situación, cabe mencionar la costumbre de presentar solicitudes automáticas de toda la transcripción en la mayoría de casos apelados; la dilación en la consignación de honorarios del taquígrafo cuando éstos proceden; el aumento vertiginoso de radicaciones de causas criminales y civiles en los tribunales de instancia, cuya ventilación exige la constante presencia de los taquígrafos en las salas y les reduce el tiempo disponible para transcribir notas; y la escasez de estos funcionarios. No obstante las medidas adoptadas encaminadas a solucionar el problema, tales como la eliminación del requisito de transcribir todo caso *ex parte* y el dotar varias salas con máquinas modernas para perpetuar y reproducir la prueba oral, nos enfrentamos al volumen de asuntos judiciales en contínuo ascenso, lo que unido a las limitaciones presupuestarias de la rama judicial, han impedido superar esta falla clásica en nuestro sistema de administrar justicia.

---

[3] Por ser abundante, optamos por unir a los originales de ambos casos, el desglose detallado de toda esta información, anexando únicamente a la presente opinión el cuadro estadístico correspondiente a los cinco (5) años examinados.

Ello nos movió a hacer la siguiente advertencia en *Pueblo* v. *Rolón Marxuach*, 104 D.P.R. 690 (1976), en el que se obtuvo automáticamente la transcripción de toda la prueba oral para luego argumentarse un planteamiento de derecho:

"El costo social de esta apelación ha sido desproporcionado en horas de servicio público destinadas a la sórdida labor de transcribir 471 páginas de récord inútil enajenando al taquígrafo de otras funciones de provecho y urgencia para la administración de justicia, y en tiempo adicional de funcionarios en los trámites hasta la decisión final. La defensa de acusados debe integrarse sin privilegios a los procesos vitales de la sociedad democrática, sin sacrificarla con recursos estériles. El derroche de tiempo útil en la provisión de justicia justificó plenamente la Regla 15 de nuestro Reglamento y fortalece la corriente reformista que ya apunta hacia una ulterior modificación del proceso apelativo que sujetaría la aceptación del recurso a discreción del tribunal de última instancia, método seguido en el procedimiento civil. Las apelaciones frívolas se encargarán de precipitar la poda de hojarasca exhuberante que entorpece el curso procesal. *Cf. Rabell* v. *Alcaides Cárceles de P.R.*, 104 D.P.R. 96 (1975)."

El mecanismo intermedio que sirve el propósito de cumplir con nuestra misión constitucional de adjudicar con razonable rapidez los casos criminales que se apelan—sin menoscabar los derechos sustantivos de las partes y sin que se haga necesario el abrir a discusión en nuestro sistema de administrar justicia la deseabilidad o no de convertir el derecho absoluto de apelación en uno de carácter discrecional—radica en que ejercitemos nuestra facultad supervisora regulando la concesión indiscriminada de las transcripciones de prueba oral limitándolas a aquellos casos en que verdaderamente se justifique su procedencia. La adopción de la "regla de necesidad", a través de la Regla 15(d) de nuestro Reglamento, a los fines de una apelación criminal, sigue una regla promulgada desde el 14 de agosto de 1974, reconocida implícitamente en las Reglas de Procedimiento Criminal, y en perfecta congruencia con la norma de hermenéutica en el sentido de que las mismas

se ". . . interpretarán de modo que aseguren la tramitación justa de todo procedimiento y eviten dilaciones y gastos injustificados."

## II

En torno al argumento de inconstitucionalidad en orden a decisiones del Tribunal Supremo de los Estados Unidos, los apelantes descansan en el caso de *United States* v. *MacCollom*, del 10 de junio de 1976, 44 L.W. 4811, el cual por sus hechos no es aquí aplicable ni sostiene tal posición. Dicho caso versa sobre el derecho de un convicto indigente a obtener una transcripción en un trámite colateral atacando una sentencia condenatoria, y no resuelve que el derecho a la transcripción de evidencia es absoluto cuando se trata de una apelación directa de la convicción.

La interpretación de las Reglas de Procedimiento Criminal y de nuestro Reglamento en lo concerniente a las transcripciones no establece diferencia alguna en cuanto a apelantes insolventes y los solventes que sean capaces de irrogar los honorarios que correspondan. Su concesión se determina atendiendo el criterio de necesidad, independientemente de la condición económica del interesado, en unión al factor tiempo que tomará su preparación.

■ Contrario a la conclusión de los apelantes respecto al alcance del caso de *United States* v. *MacCollom*, supra, la doctrina del Tribunal Supremo de los Estados Unidos reconoce que una apelación criminal no implica *de jure* la obtención de la transcripción de evidencia. En tal sentido son orientadoras las expresiones vertidas en *Mayer* v. *City of Chicago*, 404 U.S. 189 (1971), que a continuación reproducimos:

"Una [transcripción] 'íntegra de los autos' no se transforma automáticamente en una transcripción total palabra por palabra. En el caso de *Griffin* dijimos que 'hay otros medios' que un Estado puede proveer [que no sea el de las transcripciones taquigráficas para] proporcionar a los acusados indigentes una revisión en apelación lo suficientemente adecuada y efectiva. 351

U.S. a la página 20. En *Draper* v. *Washington*, supra, consideramos este asunto más detalladamente en las páginas 495–496 donde dijimos: 'Se permiten los métodos alternos para narrar los procedimientos de un juicio siempre que éstos sometan ante el tribunal de apelaciones un informe equivalente de los hechos que surgieron en el juicio y que dan lugar a los argumentos del apelante. Una declaración de los hechos con la que ambas partes estén de acuerdo, una relación completa, basada tal vez, en las minutas del juez sentenciador tomadas durante el juicio, o, en las notas aún no transcritas del taquígrafo de récord, o un escrito de excepciones, constituyen sustitutos adecuados, tan buenos como una transcripción. Además, hay casos en que alguna porción o tal vez toda la transcripción taquigráfica no es pertinente para la consideración de la apelación, y en tales circunstancias un Estado no vendrá obligado a gastar sus fondos inútilmente. Si, por ejemplo, los hechos impugnados, se refieren sólo a la validez del estatuto o a la suficiencia de la acusación sobre la cual se basó el fallo condenatorio, la transcripción es improcedente y no es necesario proporcionarla. Si el señalamiento de errores se refiere solamente a las decisiones basadas en la evidencia o a la suficiencia de la misma, la transcripción que se provea, puede muy bien circunscribirse a las partes relativas a dichas cuestiones. Aun cuando una cuestión de este tipo esté envuelta, no obstante, no es indispensable el proporcionar los autos de procedimientos relativos a una alegada falta de prueba sobre un punto que, como cuestión de ley, es irrelevante a los elementos del delito por el cual el acusado ha sido hallado culpable. El hecho de que en los ejemplos que hemos considerado, un apelante con recursos decida gastar su dinero para incluir innecesariamente en su expediente toda la transcripción, no quiere decir que el Estado deba usar sus fondos para proveer algo que no es necesario para revisión en apelación.' " (Énfasis suplido.) Págs. 194–195.

Y abundantes en pragmatismo judicial son las manifestaciones del Juez Presidente Señor Burger:

"Concurro con la opinión de la mayoría pero añado estas observaciones, principalmente, con el propósito de recalcar que en la mayoría de los casos se pueden encontrar otras alternativas para la transcripción completa, palabra por palabra, de un juicio. Las referencias a lo dicho en *Draper* v. *Washington*, 372

U.S. 487 (1963), enfatizan uno de los deberes de los abogados como funcionarios de la corte que debe ser el tratar de obtener solamente lo que sea necesario para sus casos. En la mayoría de los casos, contrario a éste, los hechos esenciales no están en controversia en apelación, o de haber una controversia, ésta gira sobre ciertos aspectos limitados del caso. Basta con examinar los alegatos de las apelaciones para darnos cuenta que la controversia sobre los hechos en la etapa de apelación, es generalmente reducida.

Todo tribunal activo está plagado de solicitudes de transcripciones libre de derechos en casos criminales. Mi propia experiencia a través de los años, ha demostrado que los abogados contratados por personas privadas son, generalmente, más parcos en sus requerimientos ya que el cliente es quien tiene que pagar los gastos incurridos en el proceso. Desafortunadamente, una de las consecuencias producidas por el 'Criminal Justice Act' y sus contrapartes estatales fue que cuando el pueblo es quien paga las costas, los abogados son algunas veces más desmedidos en sus demandas, o doblegan su juicio profesional a los deseos del cliente. Aquí está envuelto algo más que la cuestión de las costas. Una sociedad opulenta no debe ser mezquina cuando de la justicia se trate, ya que el sistema no persigue la economía como objetivo; el verdadero vicio consiste en la subsiguiente demora en lograr las transcripciones y consecuentemente en la determinación de la apelación. Cuando un apelante se excede en sus demandas con el propósito de dilatar la decisión final de la apelación, por estar, por ejemplo, en libertad hasta que se vea la apelación, el abogado que coopera con esa actitud está incurriendo en conducta anti-ética.

Estoy muy de acuerdo con el Sr. Juez Brennan en cuanto a que se deben proveer 'los autós completos y al pie de la letra siempre que sea necesario . . . .', pero los jueces y los abogados están en la obligación de evitar todo abuso que tienda a dilatar el proceso." Págs. 199–201.

■ Compartimos esta línea de pensamiento del Tribunal Supremo de los Estados Unidos. Nuestro sistema de justicia que sirve a una sociedad hoy integrada por más de tres millones de personas, está llamado a evolucionar dentro del concepto del debido proceso de ley, renovándose en continua adap-

tación a las nuevas exigencias de la realidad social, superiores en su urgencia a la particular preferencia de alguno que otro acusado respecto a la forma de ejercitar su reconocido derecho de apelación. El requisito de que el apelante justifique la necesidad de la transcripción de la prueba oral es prevención razonable contra el abuso de ese derecho en el pasado, convertido en pretexto para demorar la decisión final del caso. El sistema de justicia criminal debe rodearse de los necesarios mecanismos para preservar su vitalidad y eficacia al servicio del bien común.

### III

Finalmente, no nos persuade en esta etapa de los procedimientos el argumento de los apelantes en el sentido de que debido al tiempo transcurrido, falta de memoria y el descansar en un derecho adquirido, les resulta imposible preparar con fidelidad y exactitud la Exposición Narrativa de la Prueba requerida.

Debemos presumir que los apelantes y su abogado al momento de radicar sus respectivas apelaciones, tenían el convencimiento pleno de que en los tribunales de primera instancia se cometieron determinados errores sustanciales y de impacto que ameritan la revocación o modificación de sus convicciones. El proceso mental que ello genera no opera en el vacío sino con referencia a un marco particular de hechos, circunstancias y procedimientos acaecidos, que ordinariamente dejan en los participantes una marcada huella difícil de borrar. Se impone una deliberación ulterior al respecto y que los apelantes y su abogado realicen las diligencias de rigor conducentes a la preparación de la Exposición Narrativa, entre las cuales están el examinar las notas propias del abogado, consultar las del fiscal y las del magistrado que intervino y la lectura por el taquígrafo de las mismas. (4)

---

(4) Véanse *Pueblo* v. *Vega Cruz*, 105 D.P.R. 1 (1976); *Díaz* v. *Gaud*, 104 D.P.R. 602 (1976).

En consideración a lo expuesto, resolvemos que la obtención de una transcripción de la evidencia oral en apelaciones criminales, no es un derecho absoluto ni sustantivo y que las reglas y trámites adoptados en nuestro anterior Reglamento y el vigente son válidas por no contravenir la Sec. 6 del Art. V de la Constitución. *Se dictará Sentencia declarando sin lugar las mociones sobre transcripción total de evidencia, viniendo obligados los apelantes—bajo apercibimiento de desestimación por abandono y frivolidad—a cumplir con nuestras Resoluciones fechadas 13 de abril y 20 de mayo de 1976.*

El Juez Asociado Señor Irizarry Yunqué no intervino.

Tabla I

APELACIONES CRIMINALES Y TIEMPO TRANSCURRIDO DESDE LA FECHA DE SENTENCIA DEL TRIBUNAL SUPERIOR Y LA FECHA DE ELEVACION DE AUTOS Y TRANSCRIPCION DE EVIDENCIA, Y POR CIENTO DEL TOTAL, TRIBUNAL SUPREMO

AÑOS 1971 A 1975

| AÑO | Menos de 3 meses | | 3 a 6 meses | | 6 a 9 meses | | 9 a 12 meses | | 1 año a 2 años | | 2 años a 4 años | | 4 años o más | | Gran Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Número de Casos | % del Total | Número de Casos | % del Total | Número de Casos | % del Total | Número de Casos | % del Total | Número de Casos | % del Total | Número de Casos | % del Total | Número de Casos | % del Total | Total | % del Total |
| 1971 | 18 | 11.0 | 24 | 14.4 | 10 | 6.0 | 19 | 11.4 | 53 | 32.0 | 32 | 19.2 | 10 | 6.0 | 166 | 100 |
| 1972 | 7 | 4.2 | 14 | 8.5 | 15 | 9.1 | 15 | 9.1 | 53 | 32.3 | 44 | 27.0 | 15 | 9.8 | 164 | 100 |
| 1973 | 13 | 9.4 | 9 | 6.5 | 16 | 11.6 | 6 | 4.4 | 31 | 22.5 | 50 | 36.2 | 13 | 9.4 | 138 | 100 |
| 1974 | 6 | 6.0 | 3 | 3.0 | 4 | 4.0 | 6 | 6.0 | 18 | 17.8 | 32 | 31.6 | 32 | 31.6 | 101 | 100 |
| 1975 | 3 | 12.5 | - | - | - | - | 1 | 4.2 | 3 | 12.5 | 11 | 45.8 | 6 | 25.0 | 24 | 100 |
| TOTAL | 47 | 8.0 | 50 | 8.4 | 45 | 7.6 | 47 | 8.0 | 158 | 26.6 | 169 | 28.4 | 77 | 13.0 | 593 | 100 |

Encabezado de columna general: TIEMPO TRANSCURRIDO*

* Tiempo transcurrido representa el periodo resultante luego de habérsele deducido en todos los casos 60 días en consideración a los términos que prescriben las reglas de Procedimiento Criminal para tramitarse en instancia la transcripción de evidencia.

Fuente de Información: Oficina de Estadísticas, Tribunal Supremo