SOCIEDAD DE GANANCIALES compuesta por LUIS M. GONZÁLEZ Y otros, DEMANDANTES Y RECURRIDOS, *v.* EFRAÍN GARCÍA ROBLES, demandado y recurrente.

*Número:* CC-96-98          *Resuelto:* 23 de enero de 1997

*Víctor J. Pagán Vega,* de *Pagán & Pagán Law Offices,* abogado del peticionario; *Rafael Rivera Rosa,* abogado de los recurridos.

PER CURIAM: Debemos determinar si abusó de su discreción el Tribunal de Circuito de Apelaciones al desestimar un recurso de apelación por el apelante no haber presentado una exposición narrativa de la prueba oral desfilada ante el Tribunal de Primera Instancia. Varias consideraciones sostienen nuestra decisión. Primero, debemos tener presente los propósitos que quiso alcanzar el Legislador al crear el Tribunal de Circuito de Apelaciones mediante la aprobación de la Ley de la Judicatura de Puerto Rico de 1994. Segundo, debemos también considerar la filosofía que ha permeado la reglamentación sobre los mecanismos diseñados para presentar al tribunal apelativo la prueba

desfilada ante el tribunal de instancia y el efecto que sobre la misma tendría la decisión del Tribunal de Circuito de Apelaciones. Tercero, hay que reconocer los efectos que han tenido sobre la profesión legal los frecuentes y profundos cambios introducidos a nuestro sistema de justicia apelativa durante los últimos cuatro (4) años. Cuarto, debemos sostener el principio cardinal que ha animado en el pasado nuestras decisiones sobre la resolución judicial de las controversias, en cuanto hemos reiterado el interés de que las mismas sean atendidas en sus méritos. Además, debemos estimular que las partes que comparezcan ante el Tribunal de Circuito de Apelaciones cumplan adecuadamente con los requisitos que impone su reglamento, de forma que se le imparta certeza a sus gestiones y celeridad a sus procedimientos. El análisis de la controversia que se nos presenta, a la luz de las consideraciones esbozadas, nos lleva, en esencia, a realizar un balance de intereses: por un lado debemos analizar el interés de los litigantes, avalado por legislación, de que las decisiones emitidas por el Tribunal de Primera Instancia, en casos originados allí, puedan ser revisadas en apelación por un tribunal colegiado; y, por el otro lado, considerar el interés de promover el adecuado funcionamiento del Tribunal de Circuito de Apelaciones. El producto de este balance debe asegurar la atención justa, rápida y económica de las controversias que se presentan ante dicho foro. Estos elementos siempre han caracterizado nuestro sistema de adjudicación. Nuestras decisiones deben armonizar estos elementos, no contraponerlos.

I

El 22 de septiembre de 1995 el Tribunal de Primera Instancia, Sala Superior de Guayama, dictó sentencia declarando con lugar la demanda de daños y perjuicios por difamación instada por la parte demandante, señora Montañez Torres, su esposo e hija menor de edad, contra el

demandado Sr. Efraín García Robles. Condenó a este último a pagar la suma de veintiocho mil dólares ($28,000) por concepto de daños sufridos por los demandantes, más dos mil dólares ($2,000) de honorarios de abogado. El archivo en autos de copia de la notificación de dicha sentencia se efectuó el 2 de octubre de 1995.

Oportunamente, el 11 de octubre de 1995, el demandado presentó Moción Solicitando Determinaciones Adicionales de Hecho y Conclusiones de Derecho, la cual fue denegada por el tribunal de instancia mediante resolución emitida el 20 de octubre de 1995 y notificada el 9 de noviembre de 1995. Posteriormente, el 22 de noviembre, el demandado presentó moción de reconsideración; ésta fue rechazada de plano por el tribunal de instancia mediante resolución emitida el 30 de noviembre de 1995 y notificada el 1ro de diciembre de 1995.

Inconforme con el dictamen de instancia, el demandado acudió mediante recurso de apelación ante el Tribunal de Circuito de Apelaciones el 11 de diciembre de 1995. En síntesis, a través del mismo el demandado impugnó la apreciación que de la prueba testifical realizara el tribunal de instancia, así como la valorización de los daños que formulara dicho foro.

Por su parte, los demandantes apelados presentaron ante el foro apelativo una Solicitud de Desestimación al Amparo de la Regla 31(B)(4) del Reglamento del Tribunal de Circuito de Apelaciones.([1]) Mediante Resolución de 16

---

([1]) La Regla 31(b)(4) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, aprobado el 13 de enero de 1995, que entró en vigor el 24 de enero de 1995, entonces vigente, disponía, en lo pertinente:

"Regla 31. Desistimiento y desestimación.

"(b) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:

"(4) Que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o ha sido interpuesto para demorar los procedimientos."

En el presente caso, los procedimientos ante el Tribunal de Circuito de Apelaciones se rigieron por el Reglamento de 13 de enero de 1995. El 25 de abril de 1996 aprobamos un nuevo reglamento para el Tribunal de Circuito de Apelaciones, incorporando los cambios que sufrió la Ley de la Judicatura de Puerto Rico de 1994,

de enero de 1996 el foro apelativo declaró sin lugar la moción de desestimación y dispuso que las partes cumplieran con el trámite apelativo conforme a su reglamento. De conformidad con lo anterior, el demandado apelante presentó un apéndice conjunto. Posteriormente, la parte demandante apelada presentó su alegato.

Así las cosas, el 20 de febrero de 1996 el Tribunal de Circuito de Apelaciones dictó sentencia desestimando el recurso presentado bajo el fundamento de que el demandado apelante no elevó la prueba testifical ofrecida de conformidad con la Regla 40 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, de 13 de enero de 1995, entonces vigente. Al así resolver, señaló el foro apelativo que tal omisión del apelante le impedía evaluar sus señalamientos de error, ya que éstos iban dirigidos a impugnar la apreciación de la prueba testifical ofrecida en instancia. El archivo en autos de copia de la notificación de dicha sentencia se efectuó el 21 de marzo de 1996.

El 2 de abril de 1996 el demandado apelante presentó moción de reconsideración, la cual fue rechazada de plano por el foro apelativo mediante resolución emitida el 17 de abril de 1996 y notificada el siguiente 23 de abril. De la determinación del Tribunal de Circuito de Apelaciones desestimando el recurso de apelación, recurre ante nos el demandado peticionario haciendo el señalamiento de error siguiente:

Erró el Honorable Tribunal de Circuito de Apelaciones, Circuito Regional VI, Región Judicial de Guayama, al desestimar el Recurso de Apelación presentado por la parte demandada-recurrente apoyándose en y haciendo uso mecánico de las Reglas del Reglamento del Tribunal de Circuito de Apelaciones, privando a la parte demandada-recurrente de sus derechos civiles, derechos constitucionales del debido procedimiento de ley e igual protección de las leyes y reglamentos.

---

mediante la Ley Núm. 248 de 25 de diciembre de 1995 (4 L.P.R.A. Ap. XXII-A). En lo sucesivo nos referiremos al primero como "el Reglamento".

## II

En síntesis, a través de la discusión de su único señalamiento de error, aduce el demandado peticionario que abusó de su discreción el foro apelativo al desestimar su recurso de apelación por no haber elevado la prueba testifical ofrecida ante el tribunal de instancia de conformidad con la Regla 40 del Reglamento del Tribunal de Circuito de Apelaciones, *supra*. Sostiene en apoyo de su contención, que "honestamente y de buena fe no elevó la prueba testifical", dado que por el lenguaje de la referida disposición reglamentaria entendió que la misma le reconoce discreción a la parte que presenta un recurso apelativo para determinar si resulta necesario elevar la exposición narrativa de la prueba testifical. Sostiene, además, que del foro apelativo no estar de acuerdo y entender que la exposición narrativa de la prueba resultaba necesaria para evaluar el recurso, debió haber ordenado la preparación de la misma al amparo de la Regla 42(a) de su Reglamento, 4 L.P.R.A. Ap. XXII. En la alternativa, afirma que el Tribunal de Circuito de Apelaciones debió entrar a considerar su recurso a base del expediente, pues señala que las determinaciones de hecho consignadas en la sentencia de instancia no sostienen las conclusiones de derecho del tribunal sentenciador ni las cuantías concedidas por dicho foro.[2] Por último, solicita se le conceda un término razonable para poder elevar la exposición narrativa de la prueba, de forma tal que pueda considerarse el caso en sus méritos.

El 8 de mayo de 1996, la parte demandante recurrida presentó un escrito oponiéndose al recurso de *certiorari* y solicitando la desestimación. El 17 de mayo emitimos resolución ordenando a la parte demandante recurrida mostrar causa por la cual no debíamos expedir el auto solicitado,

---

[2] Asimismo, argumenta que el dictamen desestimatorio del foro apelativo viola sus derechos civiles y constitucionales, pues le priva de su derecho a la revisión judicial de la sentencia dictada en su contra.

revocar la sentencia recurrida y devolver el caso al Tribunal de Circuito de Apelaciones para que éste ordene la preparación de una exposición narrativa de la prueba y continúe con los procedimientos. La parte recurrida ha comparecido y con el beneficio de su comparecencia procedemos a resolver según lo intimado, sin ulteriores procedimientos.

Nuestra decisión se fundamenta en la interpretación de varias disposiciones reglamentarias y en las consideraciones esbozadas en la parte introductoria de la presente opinión, las cuales a continuación discutiremos en detalle.

## III

Comenzaremos nuestro análisis haciendo un examen cuidadoso de las Reglas 40 y 42, *supra*, y 41 y 43 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, de 13 de enero de 1995, vigente al momento en que se resolvió el presente caso.

La Regla 40 de dicho reglamento, relativa a la exposición de la prueba oral, disponía lo siguiente:

> Cuando alguna parte estime que para la resolución de una apelación o de un recurso sea necesario que el Tribunal de Circuito de Apelaciones considere alguna porción de la prueba oral presentada ante el Tribunal de Primera Instancia, deberá incluir una de las siguientes en el legajo o el apéndice conjunto, o una combinación de ellas, según el caso:
> (A) Exposición estipulada.
> (B) Exposición narrativa.
> (C) Transcripción.
> Se preferirá a la exposición narrativa, una exposición estipulada, y la exposición narrativa a una transcripción de evidencia.[3]

---

[3] Actualmente, lo relativo a la exposición de la prueba oral está dispuesto en las Reglas 19 y 20 del nuevo Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A. Dado que nuestra decisión sólo requiere analizar las Reglas del Reglamento de 13 de enero de 1995, nada disponemos en la presente opinión sobre el efecto que tiene la redacción actual de las referidas reglas sobre la discreción de la parte apelante en cuanto a la presentación de la exposición narrativa de la prueba.

■ Por sus propios términos, la regla en cuestión reconocía discreción a la parte que presentara un recurso apelativo para determinar si era necesario elevar la prueba testifical ofrecida ante el tribunal de instancia. Una equivocación en el ejercicio de esta discreción no puede sostener el castigo máximo de la desestimación y la consecuente pérdida del derecho de que un tribunal colegiado revise las actuaciones del Tribunal de Primera Instancia. La Regla 40 del Reglamento del Tribunal de Circuito de Apelaciones, *supra*, además, establecía las formas o los mecanismos disponibles para elevar la prueba testifical ante la consideración del foro apelativo; a saber, exposición estipulada, exposición narrativa de la prueba y transcripción.

■ Las Reglas 41, 42 y 43 del Reglamento del Tribunal de Circuito de Apelaciones, *supra*, que regulaban lo concerniente a cada uno de los medios para elevar la prueba testifical, reconocían amplia discreción al foro apelativo para la autorización de sus respectivos trámites. Dicho tribunal podría, incluso, ordenar *motu proprio* la preparación de una exposición narrativa de la prueba de así entenderlo necesario para la evaluación de un caso. Regla 42(a) del Reglamento del Tribunal de Circuito de Apelaciones, *supra*.

A la luz del lenguaje de las referidas disposiciones, la parte apelante ante el Tribunal de Circuito de Apelaciones

---

Nótese, sin embargo, que al igual que la anterior Regla 42(a), *supra*, la Regla 20 del nuevo Reglamento, 4 L.P.R.A. Ap. XXII-A, le confiere facultad al Tribunal de Circuito de Apelaciones para ordenar *motu proprio* la preparación de una exposición narrativa de la prueba. Además, la recién enmendada Regla 54.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, incorporó casi textualmente el lenguaje de la anterior Regla 40 del Reglamento, 4 L.P.R.A. Ap. XXII-A, manteniendo en esencia la interpretación que hemos expuesto sobre dicha regla. En todo caso, sería de aplicación el análisis de la presente opinión para determinar la razonabilidad de la actuación del Tribunal de Circuito de Apelaciones, ante la omisión de la parte apelante en relación con la presentación de la exposición narrativa de la prueba. Véase la nota al calce número 5, para una exposición sobre la práctica del Tribunal Supremo en cuanto al asunto que tratamos.

entendió que la exposición narrativa de la prueba era innecesaria, ya que de los documentos sometidos ante el Tribunal de Circuito de Apelaciones y de las determinaciones de hecho consignadas en la sentencia surgía la improcedencia de las determinaciones de derecho. El Tribunal de Circuito de Apelaciones, por el contrario, entendió que la exposición era necesaria. Ante estos hechos el tribunal debió haber ordenado la preparación de la Exposición Narrativa de la Prueba antes de imponer la drástica sanción de la desestimación.

Debemos resaltar que estamos ante una parte que actuó diligentemente en la tramitación de su caso, no sólo ante el Tribunal de Circuito de Apelaciones, sino también ante el Tribunal de Primera Instancia. Una vez el tribunal de instancia dictó sentencia, solicitó determinaciones de hecho adicionales y luego presentó una reconsideración. Dado que estos trámites fueron infructuosos, presentó oportunamente su escrito de apelación ante el Tribunal de Circuito. Después de que dicho tribunal denegara la moción de desestimación presentada por la parte apelada, promovió las gestiones necesarias para la preparación del apéndice conjunto que requería la Regla 37 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, el cual presentó también oportunamente.[4] Ante los hechos del caso de autos, resulta insostenible la actuación del Tribunal de Circuito de Apelaciones de castigar una equivocación en el ejercicio de la discreción de un litigante mediante la máxima sanción de la desestimación del recurso de apelación. Pasemos ahora a analizar sucintamente las consideraciones esbozadas en la parte introductoria de la presente opinión.

■ Como primera consideración, al interpretar las

_____

[4] No estamos ante una situación de probada falta de diligencia del apelante o de la existencia de un error insubsanable, circunstancias estas que pudiesen haber justificado una desestimación.

disposiciones reglamentarias debemos tener presente la intención legislativa al crear el Tribunal de Circuito de Apelaciones y resaltar la clara distinción entre la apelación y los recursos discrecionales. La intención detrás de la creación del Tribunal de Circuito de Apelaciones surge con claridad de la Exposición de Motivos de la Ley de la Judicatura de Puerto Rico de 1994 (en lo sucesivo, Ley de la Judicatura de 1994). En lo pertinente, dispuso allí el Legislador que

> ... la reforma que hoy se presenta tiene como objetivo consumar en el proceso de transición las siguientes metas:
> (3) Conceder el derecho de apelación a los ciudadanos en casos civiles y criminales, extendiéndose a todo puertorriqueño afectado adversamente por una decisión de un tribunal el derecho a que un panel apelativo de un mínimo de tres jueces revise esa decisión .... Exposición de Motivos de la Ley de la Judicatura de 1994 de 28 de julio de 1994, Leyes de Puerto Rico, págs. 2801–2802.

De aquí se refleja, sin lugar a dudas, que uno de los propósitos cardinales de la Ley de la Judicatura de 1994 fue proveer la oportunidad de que toda decisión tomada por un sólo juez en casos originados en el Tribunal de Primera Instancia pudiera ser revisada por un tribunal colegiado como cuestión de derecho.

El recurso de apelación permite a cabalidad la consecución de este fin. A diferencia de los recursos de naturaleza discrecional, como el *certiorari* o la revisión, una vez cumplidos los requisitos que confieren jurisdicción al tribunal y los demás que permiten su adecuada dilucidación, la apelación impone al tribunal apelativo la obligación de atender y resolver en los méritos, de forma fundamentada, el recurso presentado. Recientemente reconocimos su importancia. Dijimos que: "El derecho de apelación tiene unas funciones claras y unas virtudes evidentes que rebasan los diferentes enfoques y criterios en cuanto a su impacto sobre el Sistema de Administración de

Justicia." (Énfasis suprimido.) *Rivera v. E.L.A.*, 140 D.P.R. 168, 169 (1996). Allí también expresamos que:

> En el fondo, la justicia apelativa explica cómo todo expediente judicial
> "... vive pleno de humanidad. Inquietudes, ansiedades, esperanzas laten sin cesar en cada una de sus hojas. Es el trámite cierto hacia una decisión. Una persona, una familia, un grupo pueden estar pendientes del desarrollo, que conduce a un resultado. ... *Rivera v. E.L.A.*, supra, pág. 170.

Debe tenerse presente esta justificada expectativa del litigante al resolver controversias como la del presente caso.

■      Como segunda consideración debemos analizar la filosofía que desde algún tiempo ha sostenido la utilización de los mecanismos para presentar al tribunal apelativo la prueba testifical que tuvo ante sí el tribunal sentenciador al tomar la determinación cuya revisión se solicita. Como regla general han existido tres (3) mecanismos, o alguna variante de éstos, con el fin reseñado: exposición narrativa de la prueba aprobada por el tribunal sentenciador, transcripción de evidencia y exposición estipulada.

■      En 1976 sostuvimos la constitucionalidad de las disposiciones que en determinadas situaciones sustituían la utilización del mecanismo de la transcripción de evidencia por el de la exposición narrativa de la prueba, aun en casos criminales.[5] Cabe señalar que las sentencias finales en los casos criminales se revisaban como cuestión de derecho mediante el recurso de apelación. Después de resaltar los graves problemas que sobre la administración de la justicia imponía la práctica de solicitar transcripciones de evidencia automáticamente en todos los casos, en aquella ocasión dijimos lo siguiente:

---

[5] Entonces también existía el mecanismo de la exposición de la prueba por convenio de las partes. Regla 209 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

El mecanismo intermedio que sirve el propósito de cumplir con nuestra misión constitucional de adjudicar con razonable rapidez los casos criminales que se apelan —sin menoscabar los derechos sustantivos de las partes y sin que se haga necesario el abrir a discusión en nuestro sistema de administrar justicia la deseabilidad o no de convertir el derecho absoluto de apelación en uno de carácter discrecional— radica en que ejercitemos nuestra facultad supervisora regulando la concesión indiscriminada de las transcripciones de prueba oral limitándolas a aquellos casos en que verdaderamente se justifique su procedencia. La adopción de la "regla de necesidad", a través de la Regla 15(d) de nuestro Reglamento, a los fines de una apelación criminal, sigue una regla promulgada desde el 14 de agosto de 1974, reconocida implícitamente en las Reglas de Procedimiento Criminal, y en perfecta congruencia con la norma de hermenéutica en el sentido de que las mismas se "... interpretarán de modo que aseguren la tramitación justa de todo procedimiento y eviten dilaciones y gastos injustificados". *Pueblo v. Casiano Vélez*, 105 D.P.R. 33, 42–43 (1976).

Desde entonces hemos ejercido un marcado control, tanto en la aplicación de los diversos mecanismos procesales como en la determinación de la necesidad de utilizar cualquiera de ellos, dependiendo de los hechos del caso. En *Pueblo v. Casiano Vélez*, supra, resaltamos los intereses que justificaban tal grado de control. Se quiere evitar la innecesaria sobre utilización de los escasos recursos judiciales y la congestión y demora que esto genera en el perfeccionamiento del proceso apelativo, además de evitar un aumento injustificado en los costos de litigación. No cabe duda que el tribunal que habrá de adjudicar el recurso es el que está en mejor posición para determinar si es necesario analizar la prueba presentada en instancia y en caso afirmativo, a la luz de los hechos, también determinar cuál de los mecanismos disponibles puede suplir mejor tal necesidad.

Cabe resaltar que la filosofía reseñada surge también con claridad de diversas disposiciones vigentes en la actualidad. Al igual que en el Reglamento del Tribunal de Circuito de Apelaciones de 13 de enero de 1995, bajo el Reglamento de 25 de abril de 1996 están disponibles los

antes indicados mecanismos para elevar al tribunal apelativo la prueba oral desfilada ante el Tribunal de Primera Instancia. Igualmente se mantiene el principio reseñado en cuanto a la injerencia del tribunal apelativo para determinar su procedencia, dependiendo de las necesidades que presente el caso cuya revisión se solicita. La Regla 54.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, según enmendada por la Ley Núm. 249 de 25 de diciembre de 1995, promueve principalmente el uso del mecanismo de la exposición estipulada de la prueba oral, el cual se ha diseñado con el propósito de adelantar los mismos intereses que han sostenido la filosofía reseñada. La referida regla dispone, además, que "el Tribunal de Circuito de Apelaciones podrá ordenar como excepción, por iniciativa propia y en el ejercicio de su discreción, que se prepare una exposición narrativa o una transcripción de la prueba oral o de una porción de ésta". Regla 54.2(a) de Procedimiento Civil, *supra.* Igual disposición contiene la Regla 20 del actual Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, preceptiva de que: "El Tribunal de Circuito de Apelaciones *motu proprio* o a solicitud de parte podrá ordenar la preparación de una exposición narrativa de la prueba". (Énfasis suplido.)

▬▬ En la Regla 19 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, se resalta la facultad para intervenir en estos procedimientos, aun en casos en que se utilice la exposición estipulada. En lo pertinente, dispone dicha regla que "la parte apelante preparará y someterá al Tribunal de Circuito de Apelaciones un proyecto de exposición narrativa de la prueba oral pertinente al recurso, *con una moción en la que justificará la necesidad de que el Tribunal considere la prueba oral para la adecuada disposición del recurso"*. (Énfasis suplido.) Surge de esta redacción que aun cuando el mecanismo involucrado sea la exposición estipulada, se requiere la intervención del Tribunal para determinar la necesidad de eva-

luar la misma, de manera que se pueda evitar razonablemente la congestión y demora en el perfeccionamiento del proceso apelativo.([6])

■   Si sostuviéramos la actuación del Tribunal de Circuito de Apelaciones que hoy revisamos, estaríamos dando al traste con la filosofía reseñada referente a la limitación en el uso de los mecanismos de exposición de la prueba oral. Si permitiéramos que el Tribunal de Circuito de Apelaciones desestimara sumariamente apelaciones por entender necesaria la exposición narrativa de la prueba, sin antes haberle brindado al apelante la oportunidad de subsanar su error de juicio, se estaría promoviendo que los apelantes, en un gran número de casos, procuraran la innecesaria preparación y presentación de alguno de los medios de exposición. Para la protección del derecho apelativo de sus clientes, ante la más remota duda de si ésta es necesaria o no, procederían a su preparación para evitar así una posible desestimación. En los casos en que fuera innecesario, aun cuando solo estuviera involucrado el mecanismo de exposición narrativa estipulada, se estaría promoviendo un injustificado aumento en los costos de litigación y extendiéndose el período para el perfeccionamiento del recurso. Nuestra labor debe ir encaminada a eliminar trámites innecesarios, no propiciarlos. Hacer lo contrario sería subvertir la filosofía que siempre ha permeado los referidos mecanismos, a la luz de la cual se creó la "regla de la necesidad". *Pueblo v. Casiano Vélez*, supra,

---

([6]) Cabe señalar que cuando se solicita la revisión de una sentencia ante el Tribunal Supremo, usualmente mediante el mecanismo discrecional de *certiorari*, retenemos la facultad de ordenar la preparación de una exposición narrativa de la prueba cuando lo entendamos necesario, aun cuando el Tribunal de Circuito de Apelaciones no haya solicitado su preparación. Esta forma parte de nuestra facultad inherente de reglamentar los procedimientos ante nos y de asegurar la más efectiva tramitación de los recursos en el curso de su perfeccionamiento. Regla 50 del Reglamento del Tribunal Supremo, vigente, 4 L.P.R.A. Ap. XXI-A. La Regla 35(d) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A, expresamente reconoce esa facultad en torno a la elevación del expediente original ante el Tribunal de Primera Instancia, o las agencias administrativas, cuando el Tribunal de Circuito de Apelaciones no la haya ordenado previamente.

pág. 42. Entendemos que este efecto sería en extremo detrimental y nocivo al sistema apelativo, por lo que debemos desalentarlo, no promoverlo.

■ Como tercera consideración, no podemos obviar el hecho que los frecuentes y profundos cambios procesales y estructurales incorporados a nuestro sistema de justicia apelativa inevitablemente han tenido un efecto desestabilizador sobre la profesión legal. Reconociendo este hecho y con relación a la implantación del nuevo Reglamento del Tribunal Supremo, recientemente en *López Rivera v. Rivera Díaz*, 141 D.P.R. 194, 199–200 (1996), expresamos:

> Finalmente, debe tenerse en cuenta que estamos todavía en el proceso de implantar el nuevo régimen apelativo establecido en el país por la creación del Tribunal de Circuito de Apelaciones. En menos de dos años se ha legislado extensamente en tres ocasiones para establecer dicho foro. Hemos formulado dos reglamentos distintos para ese tribunal, y se han emitido en varios momentos numerosas reglas y órdenes administrativas de carácter provisional. Todo ello pone de relieve la larga y difícil *transición* que ha acompañado la creación de este nuevo régimen apelativo. Por razones obvias, hemos insistido que en las fases iniciales de este proceso es menester mantener una actitud de *flexibilidad* en la interpretación y aplicación de las nuevas normas procesales y reglamentarias. *Por ello, en varias ocasiones le hemos señalado al Tribunal de Circuito de Apelaciones que no debe actuar de forma precipitada ni ordenar tan rígidamente la desestimación de los recursos de apelación. Banco Popular v. Pellicier*, 140 D.P.R. 45 (1996); *Santos y otros v. Mun. de Comerío*, 140 D.P.R. 12 (1996). Hoy debemos hacerlo de nuevo, por tratarse de un caso en el cual el foro apelativo debió actuar con mayor flexibilidad. Como señaló la Hon. Juez Asociada Señora Naveira de Rodón, en su conferencia a los jueces de instancia y apelativos del país sobre los cambios recientes en la Ley de la Judicatura de Puerto Rico de 1994:
>
> > *Por lo prolífica que ha sido la legislación en cuanto a la creación de recursos y por su énfasis en los detalles, la litigación se ha ido convirtiendo cada vez más compleja. Se ha creado lo que podríamos llamar un campo minado procesal para los abogados. ...*
> >
> > ... [Por ello] ... los tribunales podemos y habremos de ser flexibles en la interpretación e implantación de estas leyes ....
>
> (Énfasis suplido y en el original.)

Para determinar la flexibilidad que debe demostrar el Tribunal de Circuito de Apelaciones al aplicar su Reglamento, éste podría considerar cuál fue la práctica apelativa respecto a dicho procedimiento con anterioridad a la Ley de la Judicatura de 1994.[7]

Ciertamente, los mecanismos procesales incorporados en los Reglamentos del Tribunal de Circuito de Apelaciones propenden a la más eficiente tramitación de los recursos que se le presentan. La observancia de sus disposiciones producirá indiscutiblemente un mayor grado de eficiencia y productividad. Sin embargo, la interpretación de estas normas procesales debe ser liberal y flexible, de manera tal que se logre el propósito de proveer justicia apelativa en todos los casos. Debemos tener presente que las reglas procesales no tienen vida propia; su razón de ser es propiciar la solución justa, rápida y económica de las controversias a las cuales se les aplicará el derecho sustantivo. Además, cabe señalar que hasta que no transcurra algún tiempo desde la adopción de las nuevas leyes y reglamentos, después del cual pueda razonablemente inferirse que sus disposiciones han calado en la profesión legal, su estricta aplicación produciría un efecto en extremo perjudicial sobre el litigante.

_____

[7] Particularmente en relación con el asunto que nos ocupa, la práctica que seguíamos en el Tribunal Supremo en recursos de apelación era a los efectos de solicitar la preparación de la transcripción de evidencia o la exposición narrativa de la prueba cuando ello fuera necesario para resolver el recurso presentado, aun cuando la parte no la hubiese provisto o solicitado. Como hemos señalado, la preparación de una exposición narrativa de la prueba o de una transcripción de evidencia tenía que ser autorizada por este Tribunal. Ello era así, como norma general, aun cuando la Regla 35 de nuestro Reglamento disponía expresamente que formaría siempre parte del expediente "la transcripción de la prueba oral ... o cualquier estipulación o exposición de dicha prueba ...". 4 L.P.R.A. Ap. I-A. Aun en los recursos discrecionales de revisión y *certiorari*, era la norma general ordenar la exposición narrativa de la prueba o la transcripción de evidencia cuando éstas no habían sido presentadas y las estimábamos necesarias. Es decir, no aplicábamos inflexiblemente esta disposición, sino que promovíamos la resolución de los recursos en sus méritos.

Debemos aclarar que ni la decisión a la que hoy llegamos ni las expresiones que anteceden liberan a los abogados y a los abogadas que intervengan en el trámite apelativo de su deber de conocer y aplicar los procedimientos pertinentes de forma tal que puedan descargar adecuadamente su responsabilidad profesional. *In re Pagán Hernández*, 141 D.P.R. 113 (1996).

El análisis e interpretación de las reglas para elevar al foro apelativo la evidencia testifical, también debe requerir que tomemos en consideración la necesidad de que el Tribunal de Circuito de Apelaciones funcione adecuadamente y pueda cumplir con su deber de proveer una revisión efectiva en los méritos de las sentencias finales emitidas por el Tribunal de Primera Instancia en casos originados en dicho tribunal. La presente decisión en modo alguno significa que no le estemos reconociendo a dicho tribunal las amplias facultades que posee para desestimar apelaciones incompletas, mal perfeccionadas o presentadas fuera de término. Sin embargo, en el ejercicio de estas facultades el Tribunal de Circuito de Apelaciones debe considerar, sopesar y balancear todos los intereses involucrados. También debe tener presente que la desestimación, por sus drásticas consecuencias, es un mecanismo procesal que, como regla general, debe utilizarse sólo como último recurso, después de haber tratado de procurar mediante órdenes el cumplimiento con los requisitos no jurisdiccionales que impone su reglamento. El ejercicio inflexible de esta facultad, exigiendo de forma estricta y automática el cumplimiento con alguna de las disposiciones de su reglamento, podría, en la práctica, convertir los recursos de apelación en recursos discrecionales. Esto no lo podemos permitir, puesto que desvirtuaría uno de los propósitos cardinales de la reforma judicial.

Finalmente, la decisión a la que hoy llegamos no incide negativamente sobre la capacidad del Tribunal de Circuito de Apelaciones para atender eficientemente los recursos que se le presentan, a la vez que cumple adecuadamente con los deberes que se le han encomendado y las metas que la Legislatura ha trazado. El tribunal cuenta con la facultad para emitir órdenes que propendan al más rápido y cabal perfeccionamiento de los recursos. Ahora bien, no cabe duda que si aváláramos la actuación del Tribunal de Circuito de Apelaciones, sin antes exigirle que

procure el cumplimiento con su reglamento mediante órdenes al respecto, ciertamente dicho tribunal aumentaría su índice de resolución y disposición de recursos. Bajo las presentes circunstancias, este resultado no lo podemos avalar. Como expresáramos anteriormente, la rapidez en la tramitación de las controversias que se presentan para dilucidación ante nuestros tribunales, aunque laudable, representa sólo uno de los elementos que el Sistema Judicial viene obligado a salvaguardar. Los tribunales también tenemos el deber de procurar que los remedios que incidan sobre la tramitación de los casos tiendan a promover la solución en los méritos de las controversias y la consecución de la justicia. La justicia apelativa para todos, que persiguió la aprobación de la Ley de la Judicatura de 1994, al crear un tribunal apelativo intermedio con treinta y tres (33) jueces y otorgarles a las partes el derecho a apelar en todo caso civil o criminal originado en el Tribunal de Primera Instancia, se vería frustrada si mediante una interpretación reglamentaria restrictiva priváramos a una parte del derecho a que su caso lo revise el foro colegiado creado por dicha ley. El alza en el índice de resolución de casos por el Tribunal de Circuito de Apelaciones no puede ser justificación para la pérdida innecesaria de este derecho.

Tomando en consideración lo antes expuesto y basándonos precisamente en la discreción que tiene todo tribunal al aplicar normas procesales y en la norma judicial de que los casos se deben ventilar en sus méritos, entendemos que en el caso de autos el Tribunal de Circuito de Apelaciones, antes de aplicar la severa y máxima sanción de la desestimación, debió haber apercibido al demandado peticionario de su omisión para que éste tomara acción correctiva o debió haber ordenado *motu proprio* la presentación de una exposición narrativa de la prueba conforme le permitía la Regla 42(a) de su Reglamento, *supra.* En conclusión, entendemos que abusó de su discreción el Tribunal de Circuito de Apelaciones al desestimar el recurso de ape-

lación del demandado peticionario, por éste no haber elevado ante su consideración la prueba testifical ofrecida ante el tribunal de instancia.

Por los fundamentos antes expuestos, *se dictará sentencia revocando la emitida por el Tribunal de Circuito de Apelaciones y devolviendo el caso al foro apelativo para que se continúe el trámite del mismo conforme a lo aquí dispuesto.*

El Juez Asociado Señor Negrón García disintió con una opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

## — O —

Opinión disidente del Juez Asociado Señor Negrón García.

Tres (3) principios elementales de la filosofía decisoria apelativa nos obligan a disentir: *(1) los hechos determinan el derecho; (2) para juzgar hay que conocer, y (3) el derecho de apelación no es automático, conlleva diligenciamiento y un perfeccionamiento.*

Este *certiorari* versa sobre una apelación civil presentada ante el Tribunal de Circuito de Apelaciones. *Todos los errores allí imputados al foro de instancia([1]) estaban predicados y estrechamente relacionados con la apreciación de la*

---

([1]) Son:

"1. Erró el Honorable Tribunal de Instancia al declarar con lugar la Demanda, toda vez que los demandantes *no pudieron probar que sufrieron daños a su reputación.*

"2. Erró el Honorable Tribunal de Instancia al declarar con lugar la Demanda, toda vez que la acción de *daños y perjuicios* de los co-apelados es contingente a la de la apelada y ésta no *pudo establecer daños.*

"3. Erró el Honorable Tribunal de Instancia en la concesión de las partidas de daños las cuales *no estaban sostenidas por la prueba*, y resultan a todas luces extremadamente excesivas y no guardan proporción con la prueba y los alegados daños.

"4. Erró el Honorable Tribunal de Instancia al no hacer Determinaciones *de Hechos Adicionales* y Conclusiones de Derecho." (Énfasis suplido.) *Exhibit*, pág. 019.

*prueba.*([2]) Aun así, *el apelante, Sr. Efraín García Robles, no efectuó las gestiones reglamentarias para lograr que se elevara una exposición narrativa de la prueba testifical ofrecida.* Difícilmente puede caracterizarse como *"error de juicio"* sus omisiones; menos, atribuirle un potencial uso indiscriminado por los abogados de los medios de exposición de la prueba, como *razón de decidir* mayoritario. Por ello, su apelación fue correctamente desestimada por el Tribunal de Circuito.

## I

La nueva estructura judicial, resultante de la Ley de la Judicatura de Puerto Rico de 1994,([3]) implica *reconocerle al máximo al Tribunal de Circuito de Apelaciones* todas sus prerrogativas judiciales que, a modo de herramientas apropiadas, le permitan impartir justicia satisfactoriamente, sin demoras innecesarias y sin congestionar su voluminoso calendario con recursos incompletos, *indebidamente perfeccionados* o frívolos. *López Rivera v. Rivera Díaz,* 141 D.P.R. 194, 201 (1996), opinión disidente.

El reestablecimiento del sistema de apelación civil, como parte de la competencia del Tribunal de Circuito, trae consigo varias consecuencias que es menester reconocer. *Primero,* el gran defecto de obligarlo a entender en innumerables recursos frívolos, incompletos o mal perfeccionados. "Nadie aquí ni en otras jurisdicciones cuestiona este

---

([2]) En su recurso ante el foro apelativo, el señor García Robles alegó que la Sra. María Montañez *"no presentó la más mínima prueba sobre la manera, si alguna, o el grado, si alguno, en que su reputación quedó afectada o se afectó a causa de las supuestas declaraciones difamatorias que le hiciera el apelante. Tampoco pudo establecer que su salud, bienestar y felicidad se vieran afectad[os]. La apelada, con su mero testimonio, lo único que pudo establecer, si algo, fue una pena pasajera, la cual [no] es compensable conforme a derecho".* (Énfasis suplido.) *Exhibit,* pág. 020.

Más adelante sostiene que *"si uno estudia la totalidad del récord en el caso de autos, encontrará rápidamente que el mismo está huérfano de prueba".* Además, *en varias ocasiones hizo referencia directa al testimonio de la señora Montañez en la vista en su fondo.* Recurso de apelación, pág. 7.

([3]) Ley Núm. 1 de 28 de julio de 1994 (4 L.P.R.A. sec. 22a *et seq.*).

constante fenómeno litigioso *negativo*. T.Y. Davies, *Gresham's Law Revisited: Expedited· Processing Techniques and the Allocation of Appellate Resources*, 6 Just. Sys. J. 372, 374 (1981). Nuestra jurisprudencia reconoce que '[n]o todos los casos tienen méritos suficientes para ser llevados en alzada.' *Colón Prieto v. Géigel*, 115 D.P.R. 232, 240 (1984)." (Énfasis suplido.) *In re Informe Com. Asesora Presidente*, 119 D.P.R. 165, 214 (1987), voto explicativo.

*Segundo*, un aumento sustancial en las apelaciones y una demora en la solución final de casos. "No es mera intuición. Así lo indica la mayoría de los estudios autenticados de otras jurisdicciones. W.E. Flango y N.F. Blair, *Creating an Intermediate Appellate Court: Does it Reduce the Caseload of a State's Highest Court?*, 64 Judicature 74 (1980). A corto plazo bajan las [presentaciones] del Tribunal Supremo, *pero a largo plazo se evidencia un desplazamiento y congestión hacia el Tribunal Intermedio, luego al Tribunal Supremo*, atrasándose más la solución final de los casos. Comienza entonces el temible círculo vicioso de congestión y atrasos, que se reproduce y eventualmente se eleva en espiral a proporciones alarmantes. P.A. Talmage, *Toward a Reduction of Washington Appellate Court Case Loads and More Effective Use of Appellate Court Resources*, 21 Gonz. L.Rev. 21 (1985); Rosellini, *Crisis in the Supreme Court*, 3 Gonz. L. Rev. 8 (1968)." (Énfasis suplido y escolio omitido.) *In re Informe Com. Asesora Presidente*, supra, págs. 216–218, voto explicativo.

Romper ese círculo vicioso y reconocerle sin cortapisas al Tribunal de Circuito las facultades de las que fue dotado para desestimar apelaciones incompletas o mal perfeccionadas es la solución que debe animar todas nuestras decisiones. La experiencia nos enseña que a mayor oportunidad de apelar, muchos litigantes y partes perdidosas tratan legítimamente de lograr la revocación o modificación de la sentencia. Lamentablemente habrá otros que, como estrategia forense, retrasen su cumplimiento y ejecución al

ejercitar primero el derecho de apelación en el Tribunal de Circuito y luego, ante este Tribunal Supremo, mediante *certiorari*.

## II

Tomamos conocimiento judicial de la enorme tarea que recae sobre la judicatura del país y demás funcionarios de la Rama Judicial. No obstante haberse aumentado su presupuesto, subsisten limitaciones que a veces le impiden brindar un servicio de excelencia. Sabido es también, que el Tribunal de Primera Instancia, como componente judicial más cercano al pueblo, es el más sobrecargado, necesitado de recursos y —posiblemente— el receptor menor *per cápita*. A nadie debe extrañar que en esa misma escala, pero en forma inversa, la discreción judicial haya producido abundantemente métodos e ideas originales y prácticas efectivas, en gran medida responsables de que históricamente el sistema funcione, en términos generales, de forma aceptable y satisfactoria.

*El hilo conductor del Reglamento del Tribunal de Circuito de Apelaciones*[4] *recoge las sabias lecciones de la ar-*

---

[4] Aprobado por este Tribunal el 25 de abril de 1996, en vigor desde el 1ro de mayo de 1996, *el Reglamento se ubica ante una realidad procesal-litigiosa puertorriqueña que ha variado mucho del concepto tradicional de antaño.* Si bien sus partes II, III, IV y VII atienden las apelaciones de sentencias en casos civiles, casos criminales, *certiorari* y revisión de decisiones administrativas, dicho cuerpo normativo procesal no sigue al pie de la letra los conceptos clásicos de apelación. Veamos.

La apelación civil ante el Circuito de Apelaciones presenta todos los elementos del anterior recurso de *revisión,* excepto que no se tratará como un recurso discrecional. *Sin embargo, la apelación no es automática; exige diligencia de las partes.*

Tiene las características siguientes: (*a*) El apelante presentará su escrito de apelación y alegato de no más de veinticinco (25) páginas, y acompañará un apéndice con los documentos de instancia que estime necesarios para el trámite. Regla 16 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A. (Igual que la *Revisión* anterior); (*b*) Su presentación en tiempo detendrá de ordinario los efectos del dictamen recurrido. Regla 18 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A. (Igual que la Apelación anterior); (*c*) La prueba testifical es *necesaria* si se señala algún error en su apreciación y hace indispensable la exposición estipulada, exposición narrativa y, en última instancia, la transcripción. Reglas 16(C)(3), 19, 20 y 76 del Reglamento del Tribunal de Circuito

*dua litigación en Instancia. Representa unos pragmáticos compromisos entre lo ideal y lo posible, salva lo esencial y descarta lo que verdaderamente la experiencia ha demostrado que no es imprescindible en el quehacer apelativo, según el diseño y la competencia de la Ley de la Judicatura de Puerto Rico para el Tribunal de Circuito de Apelaciones.*

Nos preocupa, pues, trasladar al Tribunal de Circuito de Apelaciones el agobio apelativo que por muchos años sufrió este Tribunal y, en consecuencia, la clase togada y los litigantes. Para dicho foro poder descargar su labor con máxima holgura y eficiencia —e indirectamente coadyuvar

---

de Apelaciones, 4 L.P.R.A. Ap. XXII-A. Este trámite, fundado en economía procesal, se dispuso originalmente en la Regla 54 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

*Estas medidas benefician a todos.* La Secretaría del Tribunal de Primera Instancia no está obligada a realizar todos los trámites que conlleva "certificar" los autos originales —en la inmensa mayoría, un voluminoso expediente civil— para elevarlo al Tribunal de Circuito. Queda sustituido por el Apéndice (Regla 16, *supra*), lo que también redunda en la economía procesal, pues los litigantes y el Tribunal de Circuito pueden concentrar sus esfuerzos en los aspectos específicos y pertinentes del récord, en que el apelante descansa la discusión de errores. Una vez resuelto lo relativo al récord del testimonio oral *indispensable*, el apelante puede ampliar su alegato con uno suplementario (Regla 21 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A) y la parte apelada podrá presentar el suyo con apéndice (Regla 22 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A). De este modo, el Tribunal de Primera Instancia también se economiza miles de horas de trabajo en centenares de expedientes cuyas transcripciones de prueba no son necesarias y, si lo son, será en función de algunos testigos.

La apelación criminal es distinta y la metamorfosis de su relativamente poco abultado y corto expediente (autos originales) sigue el tratamiento clásico. A tal efecto, la Parte III del Reglamento, *supra*, dispone que el apelante presentará su breve escrito —tres (3) páginas— ante el Tribunal de Circuito. Sus efectos serán similares a los de la apelación civil (Reglas 26 y 27 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A). La Secretaría del tribunal apelado, certificará los autos originales y lo elevará al Tribunal de Circuito, salvo que éste disponga otra cosa.

Luego de elevados los autos certificados y resuelto si es necesario elevar parte o toda la prueba testifical (vía estipulación, exposición narrativa o transcripción, Reglas 28(A), 28(E) y 29 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A), el apelante y el apelado tendrán turnos sucesivos de treinta (30) días para presentar sus respectivos alegatos. Se aparta del trámite clásico, en que la transcripción de evidencia oral habrá de estar unida en los autos antes de que puedan certificarse al Tribunal de Circuito, cambio que se había iniciado ya en las Reglas de Procedimiento Civil.

El *certiorari* y la *revisión* mantienen sus características tradicionales de autos discrecionales (Reglas 40 y 66 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A). Igualmente, comparten las medidas de sabia economía procesal adoptadas en las reglas para atender las apelaciones civiles y criminales (Regla 29, *supra*), cuando es necesario reproducir la evidencia testifical.

a nuestra delicada función revisora suprema— a la par que propiciar la buena marcha del Tribunal de Primera Instancia (héroes en gran parte anónimos, sobre cuyas espaldas descansa la inmensa mayoría del quehacer judicial), debemos fortalecer los mecanismos de apelación y revisión intermedio del Tribunal de Circuito de Apelaciones. *Hemos de evitarle el agobio funcional que antes nos tocó vivir, sin olvidar que río abajo nos encontraremos quizás pescando algunos de los problemas señalados.*

El Tribunal de Circuito tiene que funcionar en forma ágil, para beneficio de todos. Tiene que ser selectivo en la implantación de sus recursos, que no son inagotables; *contar con una amplia discreción judicial para cernir la paja del grano.*

La labor acometida por dicho foro es dramática. Desde que comenzó sus funciones, el 24 de enero de 1995 hasta el 30 de septiembre de 1996, se presentaron cuatro mil cuatrocientos veintinueve (4,429) casos que se desglosan en dos mil trescientos setenta y seis (2,376) *apelaciones*, dos mil veintiséis (2,026) *certiorari* y veintisiete (27) *hábeas corpus.* Indicativo de su alta productividad judicial, dicho foro resolvió tres mil setecientos noventa y tres (3,793) casos, a saber, el cincuenta y cuatro por ciento (54%) de las *apelaciones*, setenta y cuatro por ciento (74%) de los *certiorari* y el cien por ciento (100%) de los *hábeas corpus.* Aun así, al 30 de septiembre tenía pendientes mil noventa y ocho (1,098) apelaciones y cincuenta y tres (53) *certiorari.*

Se recurrió a este Tribunal en cuatrocientos cincuenta y siete (457) casos. De esos, trescientos cincuenta (350) —setenta y seis punto seis por ciento (76.6%)— recursos de *certiorari* fueron *denegados*, sesenta y un (61) —trece punto tres por ciento (13.3%)— desestimados y, mediante sentencia u opinión, doce (12) —dos punto seis porciento (2.6%)— confirmados, tres (3) modificados —cero punto siete por ciento (0.7%)— y veintiséis (26) —cinco punto siete por ciento (5.7%)— revocados.

Sin atribuciones de infalibilidad, impresiona el elevado número de corrección y juridicidad de sus dictámenes y sentencias. Nos referimos a aquellos recursos confirmados por este Tribunal por opinión o sentencia e implícitamente, mediante "no ha lugar", a saber trescientos sesenta y dos (362), que representa setenta y nueve punto dos por ciento (79.2 %). Reafirmamos, que la negativa discrecional de un recurso, a través de un "no ha lugar", es producto destilado "de equivalencia funcional, en lo esencial, a una apelación de *disposición sumaria*, en la que una mayoría de los jueces del Tribunal Supremo estiman que el resultado de la sentencia o dictamen del tribunal de [Circuito] 'en sus méritos' es jurídicamente correcto y justo, *y que aún habiéndose incurrido en errores, los mismos no son perjudiciales ni variarían sustancialmente el resultado*". (Énfasis suplido.) *In re Informe Com. Asesora Presidente*, supra, pág. 212.[5] Notamos también, el alto número de recursos que hemos desestimado, por varias razones, entre las que se destaca, el incumplimiento craso con nuestro Reglamento.[6] *Esta facultad de desestimar recursos mal perfeccionados por no cumplir con nuestro Reglamento, es*

---

[5] Los méritos de todos los recursos discrecionales, "con sus respectivos memorandos, apéndices y demás anejos, son estudiados y evaluados antes de la conferencia del Pleno, por: (1) un asesor jurídico del Panel Central; (2) opcionalmente por otro oficial jurídico de la oficina de cualesquiera de los jueces que así lo disponga, y (3) individual y separadamente por todos los jueces. Es por esta razón que reglamentariamente se exigen un original y copias suficientes para cada juez de todo escrito. Luego el recurso es personal y directamente informado en la conferencia plenaria por el juez a quien le fue asignado. Como ponente, éste formula una recomendación inicial, que puede ser que se deniegue el recurso, se expida, se emita una orden de mostrar causa, o se adopte cualquier otro curso de acción o trámite. En dicha etapa todos los jueces exponen —breve o extensamente— sus respectivos puntos de vista y criterios jurídicos sobre los méritos o frivolidad del recurso. ... Si algún magistrado desea estudiar el recurso más a fondo, se pospone su consideración para otra conferencia del Pleno. La divergencia de un sólo magistrado es suficiente para abrir más amplia y detalladamente la discusión. Cada magistrado expone su posición, y finalmente, por votación mayoritaria se adopta el acuerdo". *In re Informe Com. Asesora Presidente*, 119 D.P.R. 165, 210–211 (1987).

[6] Véanse los recursos AC-96-15, AC-95-45, AC-95-36, AC-95-27 y AC-95-11 desestimados por incumplir con el reglamento de este Tribunal Supremo, *al no incluir documentos necesarios para evaluarlos adecuada y responsablemente.*

*lo que la mayoría le niega hoy al Tribunal de Circuito de Apelaciones.*

## III

*"No se apela por apelar."* (Énfasis suplido.) *Pueblo v. Prieto Maysonet,* 103 D.P.R. 102, 108 (1974). Tenemos que asumir que el apelante García Robles y su abogado, al momento de presentar su apelación, tenían el convencimiento pleno de que el tribunal de instancia cometió determinados errores al aquilatar la prueba oral. El proceso mental que ello genera no opera en el vacío, sino con referencia a un marco particular de hechos, circunstancias, procedimientos y trasfondo judicial. *Pueblo v. Casiano Vélez,* 105 D.P.R. 33, 46 (1976). A fin de cuentas, *compete a todo apelante demostrar que se incurrió en los errores señalados, Pueblo v. Prieto Maysonet,* supra, pues se presume la corrección de los procedimientos en el foro de instancia.

Por ello "[e]l derecho de apelación *no es automático.* Presupone un diligenciamiento y su perfeccionamiento". (Énfasis en el original.) *López Rivera v. Rivera Díaz,* supra, pág. 201, opinión disidente. *Cuando se imputan errores relacionados con la apreciación de la prueba, el apelante tiene que elevar la prueba testifical ofrecida para que el foro apelativo pueda considerarla al resolver. De lo contrario, procede desestimar, pues se trata de un recurso mal perfeccionado.*

Recientemente, en *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139 (1996), reiteramos la norma de que una parte abandona un señalamiento de error si no lo discute adecuadamente en el alegato. ¿Acaso no ocurre lo mismo cuando el señalamiento en apelación necesita de una de las formas de reproducción de la evidencia oral y la parte no lo hace?

La Regla 40 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII, que otorga discreción a

las partes para elevar la exposición de la prueba oral, no varía este curso decisorio. *Esa discreción está directamente atada a los señalamientos de error planteados en la apelación.* Por esta razón la propia regla *manda* que "[c]uando alguna parte estime que para la resolución de una apelación o de un recurso sea necesario que el Tribunal de Circuito de Apelaciones considere alguna porción de la prueba oral presentada ante el Tribunal de Primera Instancia, *deberá incluir[la] ... en el legajo o el apéndice conjunto ...*". (Énfasis suplido.) Íd. En conclusión, *si los planteamientos en apelación cuestionan la apreciación de la prueba del foro de instancia, por imperativo procesal y por lógica, el apelante debe efectuar las diligencias que el Reglamento del Tribunal de Circuito requieren para preparar e incluir la exposición de la prueba oral en el legajo o apéndice conjunto.*

## IV

Recapitularemos. García Robles no desplegó la diligencia requerida. Era imposible evaluar *su apelación sin una exposición estipulada, exposición narrativa o transcripción de evidencia, pues todos sus señalamientos de error se basaron en la prueba testifical desfilada.* El Tribunal de Circuito de Apelaciones no podía intervenir con las determinaciones de hecho del juez de instancia, pues *"los demandantes recurrentes no elevaron una exposición narrativa de la prueba".* (Énfasis suplido.) *Benítez Guzmán v. García Merced,* 126 D.P.R. 302, 308 (1990).

Finalmente, no cabe configurar que la desestimación le privó de su día en corte. *Primero*, no estamos ante un derecho absoluto de rango constitucional, sino cualificado. *Segundo*, una apelación presupone, de ordinario, que ha habido un proceso previo y un juicio en su fondo. *Tercero*, es al apelante a quien compete perfeccionarla, no al tribunal.

Preocupa sobremanera la decisión mayoritaria que revoca al Tribunal de Circuito de Apelaciones. Debilita así su facultad de desestimar una apelación no perfeccionada de acuerdo con la ley, su reglamento, o no presentada o proseguida con diligencia o buena fe. *Regla 83 del Reglamento del Tribunal de Circuito de Apelaciones*, 4 L.P.R.A. Ap. XXII-A.

*Un tribunal intermedio, congestionado de apelaciones frívolas o mal perfeccionadas, difícilmente puede descargar eficazmente sus funciones.*